MARTIN KREGEL et al., Appellants, v. HENRY FREDELAKE, SR.,
Appellee.

**DEEDS:** Past Gratuitous Services.  A deed executed in considera-
1  tion of a nominal sum of money, which was never paid, and in
consideration of past gratuitous services, is unassailable in the
absence of a showing of fraud or mental incompetency.

**DEEDS:** Conveyance (?) or Will (?)  Deed reviewed and held to
2  pass a present interest, with right to possession and enjoyment
deferred, and, therefore, not to constitute a will.

*Appeal from Clayton District Court.*—W. J. SPRINGER,
Judge.

DECEMBER 14, 1918.

SUIT in equity, to set aside conveyance of real estate,
and for other relief.  On trial to the court, the petition was
dismissed, and the plaintiffs appeal.  The facts are suffi-
ciently stated in the opinion.—*Affirmed.*

*J. H. Lloyd* and *A. H. Bowman,* for appellants.

*D. D. Murphy & Son,* for appellee.

WEAVER, J.—On February 7, 1913, one Karoline Roh-
wedder, resident of Clayton County, was the owner of a
small house and lot in the town of Guttenberg;  also a
quantity of household furniture;  all said
property being of an aggregate value not ex-
ceeding $600.  There is an intimation in the
record that she had some money;  but if so,
the amount is not shown, and evidently could not have been
of large moment.  She was a widow, of about 80 years of
age, and lived alone.  She had one child, a daughter, who
was the mother of the plaintiffs in this action.  Whether
the daughter and grandchildren lived in the same neighbor-

1. DEEDS : past
gratuitous
services.

hood, is not shown in the record; nor does it appear that they or any of them visited the deceased, or gave her any aid or assistance. The defendant, Henry Fredelake, was a near neighbor. On February 7, 1913, Mrs. Rohwedder executed a deed to the defendant, in the following form:

"Know all men by these presents: That I, Karoline Rohwedder, Guttenberg, Jefferson Township, of the county of Clayton and state of Iowa, in consideration of the sum of two 00-100 dollars, in hand paid by Henry Fredelake, Sr., of Guttenberg, Clayton County, and state of Iowa, do hereby sell and convey unto the said Henry Fredelake, Sr., the following described premises, situated in the county of Clayton and state of Iowa, to wit, viz.: Lot No. 9 (nine), Block No. 17 (seventeen), part of town of Guttenberg called Prairie La Porte, and all property I own at the time of my dead, including furniture and other household goods belonging to me at the time that above named Henry Fredelake shall be owner of all this property above mentioned after my dead, but that I shall have the right to use above named property as long as I live. And I hereby covenant with the said Henry Fredelake, Sr., that I hold said premises by good and perfect title, that I have good right and lawful authority to sell and convey the same, that they are free and clear from all liens and incumbrances whatsoever. And I covenant to warrant and defend the said premises against the lawful claims of all persons whomsoever. And the said Karoline Rohwedder hereby relinquishes her right of dower in and to the above described premises.

                    "Caroline Rohwedder
"Signed this 7th day of February, 1913.
"In the presence of:

          "George A. Fredelake,
          "William Schmell."

This instrument was duly acknowledged, delivered, and recorded. The grantor continued to use and occupy the

premises until the time of her death, March 31, 1916.  In

July, 1915, something more than two years

2. DEEDS: con-    after the making of said conveyance, Mrs.
veyance (?)
or will (?)    Rohwedder executed a will, in which she

provided as follows:

"After my death and after all my debts, if any, and
funeral expenses are paid, I give and bequeath the remain-
der of my property of any description that I may possess
after my death, to the following grandchildren of mine, Ida
Kregel and Hilda Kregel, daughters of Fred Kregel and
Pauline Kregel, each shall have $100 of my estate and the
remainder of my estate shall be equally divided between Gus-
tave Kregel and Martin Kregel, grandsons of mine, sons of
above named Fred and Pauline Kregel."

This will has been duly probated.

Basing their claims on the devise or bequest above quot-
ed, the grandchildren bring this action in equity, to have
the deed to the defendant adjudged void and of no effect.
The grounds upon which this relief is asked may be stated
as follows:

(1) That the deed, by its terms, conveys to the defend-
ant no present interest in the property.

(2) That such conveyance was made upon considera-
tion of the defendant's verbal agreement to care and pro-
vide for the grantor for the remainder of her life, and give
her proper attendance in sickness, and pay her funeral ex-
penses; and that defendant failed and neglected to perform
his said agreement.

(3) That the expressed consideration of $2.00 was never
paid.

(4) That the deed, so-called, is testamentary in form
and character, and not made or intended as a conveyance;
and that it was not witnessed or executed in the manner
or form prescribed by the statute to make it effective as a
will.

In answer, the defendant admits the execution and delivery to him of the deed in question, but denies that it was intended to take effect in the future, or as a mere will, and denies that it was in consideration of an agreement on his part to support the grantor during the remainder of her life. He alleges, however, that, for a period of several years, he had been performing various services for the deceased, who lived alone, and frequently gave her neighborly assistance; that such services were quite continuous in character, and rendered at any and all times, as deceased might need them; and that she made the conveyance of the property to him in recognition of such favors, and in compensation of such further assistance as he might give to her in the future, which assistance he, in fact, continued to give her during her life. He further alleges that the property did not exceed $300 in value, and denies that plaintiffs acquired any right, title, or interest therein, under the will of the deceased.

The trial court found that plaintiffs had failed to make a case for equitable relief, and dismissed the bill.

The testimony in the case is peculiarly meager and inconclusive in many respects. It does appear, however, that deceased had, for some time, been trying to dispose of the property in a manner which would enable her to retain its possession and use during the remainder of her life. At one time, she prepared a paper, which is not in existence, but which, from description, was probably in the nature of a will, by the terms of which she proposed to give the property to the Frauen Verein, or Ladies' Aid Society, of her church, if the society would assume care of her while sick. This paper she took to her pastor, who laid the proposition before the society, which declined to accept it. The paper was written by herself, in German. At another time, she made a similar proposition to her neighbor, one Radach, who also refused the offer. Later, she made the conveyance in

question to the defendant. For that purpose, she went to
one Scholtz, a person who was in the habit of drawing pa-
pers for others, and informed him that she wanted to deed
the property to Fredelake. She said he acted as her hired
man, and she wanted to give him something, but wanted it
understood that she was to own the property as long as she
lived. Scholtz told her it could be done by will or by deed.
This witness says his talk with the woman was in German,
and, after giving her words in that language, he translates
them as follows:

"I will sell this property to Mr. Fredelake, with the
understanding I can remain in it as long as I live."

Speaking of Fredelake to Scholtz, she also said, "He
does everything for me." For some reason, the deed was not
then drawn; but later, she went to another acquaintance,
one Class, who drew it in the form in which it appears in
the record. He says:

"Mrs. Rohwedder spoke German to me, and I tried to
put in English the same as I understood her to want it.
She wanted to deed the property to Fredelake, but wanted
to have the use of and live in the property as long as she
lived. That is what she told me, and that is what I intended
to put in the deed, as I understood it. Henry Fredelake was
to get the property after her death. You see that on the
deed. The deed says everything she wanted."

The witness Scholtz also drew the will which deceased
executed, two years later. It will be observed that the will
makes no express mention of any real estate. Of this trans-
action, the witness says:

"After she had divided the money among her grand-
children, I said, 'What do you intend to do with the real
estate? You didn't mention anything about that.' And
she replied, 'I have nothing to do any more with that prop-
erty. I sold it to Henry Fredelake.'"

There is no claim or suggestion that the woman was

not of sound mind to the last. Neither is there any evidence that, in making this conveyance, she was subjected to undue influence, or was in any manner imposed upon or misled by the defendant, or by anyone acting in his interest. The property was her own. It was of comparatively insignificant worth. Much of the evidence is to the effect that it did not exceed $300 in value. She was living alone; and, so far as she needed help or assistance, it appears that she had to look to her neighbors, rather than to her daughter or grandchildren, none of whom, so far as the record shows, gave her any attention. While two or three of the neighbors, testifying as witnesses, say that they never saw Fredelake performing any service for deceased, it is very clear that she thought him a helpful neighbor and friend, and felt an obligation of gratitude to him which she sought to discharge by this conveyance. She had a perfect right to dispose of the property by sale, by will, or by deed, to others than her relatives; and, if this was done freely, and without any overreaching by fraud or deceit, the plaintiffs are without standing in court to have such transaction avoided. The burden is upon them to show facts justifying the interference of equity; and in this, they have signally failed.

It is unnecessary for us to consider whether an instrument in the form of this deed could be given effect as a will. Defendant makes no claim of that kind. The deed, though awkwardly expressed, leaves no room for reasonable doubt of the intention of the grantor to presently convey the entire fee, subject only to the life tenancy of the grantor. The fact on which appellants place much reliance, that the grantee did not report or return this property for assessment or taxation, and that the grantor continued to take care of the taxes, is a circumstance of no material weight; for, in the absence of some agreement or stipulation to the contrary between life tenant and remainderman, it is the duty of the former to pay the taxes. Nor is it a matter of

controlling importance whether the nominal consideration of $2.00 was, in fact, paid. But the payment is acknowl- edged in the deed, and there is other evidence that it was actually made. If she saw fit, of her own good will, to give the money back to the grantee, it can have no effect upon the validity of the conveyance. It is, of course, true, as counsel say, that an agreement to pay for services which have been gratuitously rendered, is without consideration, and will not be enforced by the courts; but if the party to whom the service is rendered voluntarily pays for it, or if he gives and turns over to the other party money or proper- ty, as an evidence of his gratitude or appreciation of the favor done, such payment or gift is irrevocable, and the title of the person to whom it is given is, in the absence of fraud, good against the world.

The decree appealed from is right, and it is—*Affirmed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.