LUELLA BAKER, Appellee, v. OSCAR FOWLER, Executor, Appellant.

No. 41678.

APRIL 4, 1933.

1158

Graham & Graham, T. M. Rasmussen and G. C. Dalton, for appellant.

Chas. S. White, for appellee.

ALBERT, J.—The plaintiff was born on the 12th day of March, 1897, and is the daughter of Hannah and Lev Parrott; the latter being deceased at the time of the bringing of this action. Plaintiff alleges that shortly after her birth, A. B. Burwell and Fannie Burwell, now deceased, called at the home of her father and mother and orally requested her father and mother to permit them to name said child, this plaintiff; that if Lev and Hannah Parrott would permit the said Burwells to name said child and in part to bear the name of the said Mrs. Burwell, the said Burwells would, at the death of the survivor, give to said child, this plaintiff, their home, of whatsoever the same might consist or whatsoever they might own and occupy at that time as a reward for such naming of said child. This request was complied with and the Burwells were permitted to name such child, and the Burwells acquiesced therein and gave to said child, this plaintiff, the name of Luella Parrott, and she has ever since borne said name.

The plaintiff was married to Alfred Baker on November 17, 1915, and is now the wife of the said Alfred. Asa Burwell predeceased Fannie, and Fannie died seized of lots 1, 2, and 3 of subdivision of lot 1, block 10, in the town of Exira. Said real estate had been used and owned by said A. B. and Fannie L. Burwell as a home for twenty years and more. Oscar Fowler was appointed executor of the estate of Fannie L. Burwell and has neglected and refused to carry out the terms of said oral agreement, although the plaintiff has in all respects complied with the same.

On the trial of the case, plaintiff rested almost entirely on the testimony of Hannah Parrott, her mother. The district court held that the showing was sufficient to entitle plaintiff to recover and entered decree accordingly.

Three principal contentions are made by the appellant as follows: (1) That Hannah Parrott was an incompetent witness under section 11257, Code 1931, and without her testimony plaintiff had

no case; (2) that the court had no right to enter a money judgment; and (3) that in an action for specific performance the quantum of proof offered was not sufficient to warrant the court in entering a decree in favor of the plaintiff.

We think this case is ruled by the determination of the question referred to last, contention 3 made by the appellant.

Passing for the moment the question of the competency of Hannah Parrott to testify in the case, and assuming, without deciding, that she was a competent witness, we turn to the law governing actions of this kind. The plaintiff is asking a specific performance of this alleged oral contract and she has the burden of proving the same by clear, satisfactory, and convincing evidence. Lockie v. Baker, 206 Iowa 21, 218 N. W. 483.

Since the lips of the party against whose estate the contract is sought to be enforced are closed by death, the testimony of the witness Hannah Parrott deserves the court's most careful scrutiny. We said in Garman v. Wettengel, 199 Iowa 1150, 203 N. W. 266:

"This case belongs to a class which usually challenges the scrutiny and the skepticism of the court. The evidence upon which such a case usually rests is such, in its very nature, that direct disproof is quite impossible. The defendants must rely largely upon circumstances of inconsistency and improbability. Such case imposes upon the court the special duty of receiving the direct testimony relied upon by plaintiff, subject to every fair test which tends to weaken its credibility."

In Ross v. Ross, 148 Iowa 729, 127 N. W. 1034, 1035, this court said:

"The questions involved are almost wholly, if not entirely, questions of fact. * * * As the alleged vendor is dead and cannot give his version of the matter, it is a wholesome rule of law that the testimony to sustain such a contract as is relied upon here must be clear, satisfactory, and convincing."

Other Iowa cases holding to this rule are: Holmes v. Connable, 111 Iowa 298, 82 N. W. 780; Stennett v. Stennett, 174 Iowa 431, 156 N. W. 406; Groh v. Miller, 196 Iowa 1367, 195 N. W. 259; In re Estate of Shinn, 207 Iowa 103, 222 N. W. 569.

An application to enforce the specific performance of a contract is always addressed to the sound discretion of the chancellor,

guided and governed by the general rules and principles of equity jurisprudence. In such cases, relief is not a matter of right in either party, but is granted or withheld, according to the circumstances of each case, when such rules or principles will not furnish an exact measure of justice between the parties. Neither can any rules or principles be laid down which will be of absolute obligation or authority in all cases. Young v. Daniels, 2 Iowa 127, 63 Am. Dec. 477; Zundelowitz v. Webster, 96 Iowa 587, 65 N. W. 835; Thurston v. Arnold, 43 Iowa 43.

With these settled rules, we turn to the evidence in this case.

Hannah Parrott, mother of the plaintiff, testified that a day or so after the birth of the plaintiff, Fannie L. Burwell and Asa Burwell were at her home and "they (the Burwells) asked to name her Fannie Luella, now only we just gave her Luella, and they promised her home and contents as they left it when they died, that she would have that." This answer was duly objected to. She further testified:

"Well, first they asked to name her and made the proposal and I consented to it, and they both were satisfied. They said they would give their name if they named her. We told them they could name her and it would be satisfactory, and she could go by that name, Luella. They wanted to name her and would name her Luella; that is what they said they would name her. The baby we were talking about was the plaintiff. The Burwells lived on a ten acre tract they owned some distance from our home and later moved nearer to us on a 28 acre tract, and then they moved to Exira."

Later the witness says she talked to the Burwells, and Asa, just a few days before he died, told her he intended her (Luella) to have the home and contents and all when they were passed away.

"Fannie told me that the home was to be Luella's the last conversation we had about it. The girl visited back and forth with the Burwells, they seemed pleased to have her visit them. When they were sick they always called and she answered their calls. She nursed Asa in his last illness and cared for him until his death. She cared for Fannie in her sickness until others stepped in and took charge. After this time, Mr. and Mrs. Burwell mentioned or referred to this conversation and to the fact of the naming of Luella.

"Q. Well, now, going back, there is considerable period between that time and time that you say they named the baby, in

the meantime, has Fannie Burwell or Asa Burwell referred to the fact of the naming of this girl and this home? A. Yes sir. They always said that Luella was just the same as a daughter to them, and they named her and wanted her to have the home for the name."

One Hensley, who lived in the same block with the Burwells, testified to a conversation with Asa Burwell about the property in Exira. He said: "He (Asa) as good as said that this would be her property at the time of their death. Fannie was present. This occurred about 30 days before his death."

Hattie Dryden testified that one time shortly after the death of Asa "Fannie was out and I was there, and she made the remark that she had her will fixed and Luella was to have the home place at that time, and had even mentioned that to me at times before. She said Luella was named for her and that was her and Asa's way of repaying her for the namesake. Asa often mentioned that Luella Parrott was named for his wife and she was to have their home place when they were through with it. These statements were made over twenty years ago." On cross-examination the witness said: "She (Mrs. Burwell) said she had made her will a few days before I went there. She said she had provided in the will that Mrs. Luella Baker was to have the home place. She did not say who was to have the 28 acre farm south of town. She went on to tell me that she did not think very much of her folks and did not want them to have it. She made the statement that she was going to have her will fixed so her relatives would not get anything. She already had her will fixed at that time. She had it made a few days before. She seemed to have considerable feeling against her relatives. She said Asa did not feel that they (her relatives) should have anything; that they never did anything for them and she was not going to let any of them have any of her property."

Phippen as a witness testified: That he was acquainted with Asa and Fannie Burwell; talked to Fannie during the last few years of her life concerning the disposition of the home in Exira and Luella Baker in Fannie's house. The witness spoke of the will and proceeds: "She (Fannie) said her property went to Luella Baker— her home. This was a few months before Fannie's death. Fannie went on to tell me about her business and that she was going to have Luella Baker to have the house where she lived. She had pro-

vided for that in her will. She said, 'I made a will,' and Luella Baker was going to get the house, and that was all that was said about it."

Lillian Lowers, whose house was on the adjoining lot to the Burwells, testified as a witness that Fannie talked to her about Luella Baker and her property. "She told me that Luella was to have the place when they were through with it. She said she named her and was there at the time of her birth. Asa told me the same thing. He (Asa) said she was to have the place when they were both dead. He said they named her. Mr. Burwell died January 26, 1926, and Mrs. Burwell died December 31, 1930. Asa and Fannie both told me that Luella was to have the house. She told me that she didn't want any of her folks to have any of her property. She seemed quite peeved with her relatives, and there was not a thing she would let them have she could help."

Elmer Fowler as a witness testified that he had talked with Mrs. Burwell and she said Luella was to get the property there in town. She said they were the ones that gave her the name.

"Q. Did they ever in any of these conversations say to you why they were giving her this property? A. Well, it was mostly because they had named her.

"Q. Was that what they said? A. Yes sir, and she had been with them a good deal as their child, she had been with them a whole lot, and had taken care of them a whole lot."

On cross-examination this witness said in response to a question:

"And she said she was going to give that to Mrs. Baker because she had been a friend of the family and she had helped them and she thought a good deal of her? A. That was about the way she figured it, yes sir.

"Q. That was the reason she gave for wanting to give this property to Mrs. Baker? A. Yes sir, a good deal of it, yes sir."

Mrs. Elmer Fowler testified: "Heard Mrs. Burwell speak concerning their property in Exira, how it was to be disposed of and why. Luella was to have it for her name. She was named after Fannie Burwell. Mrs. Burwell talked with me more than once about this matter. Asa Burwell had not talked with me as much about it as his wife. I knew that Mrs. Baker was in the Burwell home

considerable. I have known of her doing work and taking care of Mr. Burwell during his illness. She took care of them both a good deal of the time and took care of Mr. Burwell until he was removed from the home. While they (the Burwells) seemed to think as much of her as their own child. They said they thought lots of her, and that is about as much as they ever said. They never said she was really their child or anything like that. She was about the same thing to them."

It is stipulated that Fannie L. Burwell died seized in fee-simple title in and to the premises here involved. The will of Fannie L. Burwell was also stipulated in the record and made no provisions whatever for the plaintiff in this case.

This is practically all of the material testimony introduced on behalf of the plaintiff. We have read the same with care and are quite satisfied that the evidence is not of that clear, satisfactory, convincing type which is necessary to make a case for the plaintiff in a case of this character.

It is our opinion that the court should not have granted the plaintiff the relief it did, and the case is reversed.—Reversed.

KINDIG., C. J., and EVANS, ANDERSON, DONEGAN, KINTZINGER, MITCHELL, and UTTERBACK, JJ., concur.