AUGUST D. LANFIER, by his next friend, HARRY H. LANFIER, Plaintiff, Appellee, v. LIZZIE LANFIER et al., Defendants, Appellees, TENA BANHAGEL MALONE, Administratrix, Defendant, Appellant.

No. 44841.

OCTOBER 24, 1939.

Thompson & Thompson, for appellee.

F. A. Martin and E. W. Mead, for appellant.

MILLER, J.—This is a suit in equity to quiet title to certain residence property in Muscatine, Iowa. The plaintiff-appellee is a minor, approximately 13 years old at the time of trial, and brings suit through his father, as next friend. The defendants are the administratrix of the estate of one August Schultz, deceased, and the heirs of said decedent.

The petition identified the parties to the suit, alleged that plaintiff was the absolute owner in fee simple to the property in question, subject to a life estate in said property in his parents, that defendants claim adversely to plaintiff, and prayed for decree quieting title in the plaintiff. The answer of the defendant-appellant, administratrix of the estate of the said decedent, admitted the identity of the plaintiff, denied all other allegations of the petition and alleged that the property was owned in fee simple by the decedent at the time of his death, and descended to his heirs subject to his debts and the costs of administration of his estate.

During the trial, the plaintiff amended his petition by adding thereto Count II, which asserted that, on March 26, 1926, the decedent made an oral contract with the plaintiff, through his mother, whereby decedent agreed that if plaintiff's mother would name plaintiff after the decedent, the decedent would devise by his last will to the plaintiff the real estate in question in fee simple, reserving to the parents of plaintiff a life estate in said real estate; that plaintiff's parents accepted the proposal and named plaintiff after decedent; that decedent neglected to perform his oral contract; that decedent delivered possession of the real estate to the plaintiff and his parents, who have held possession under said oral contract for about 12 years; the peti-

tion, as amended, prayed for a decree that plaintiff be adjudged absolute owner in fee of the real estate and for a deed of conveyance of said real estate to plaintiff, reserving a life estate in his parents.

Appellant amended her answer, specifically denied the oral contract asserted by plaintiff, denied that the alleged proposal was accepted, denied that decedent failed to perform any such contract, and alleged that plaintiff was named several months prior to the date of the alleged contract. Appellant prayed that the petition, as amended, be dismissed.

At the trial, it was stipulated that, at the time of his death, the decedent, August Schultz, was the owner of the property in controversy. Accordingly, there was no claim made by plaintiff that he acquired title either by gift or through adverse possession prior to the death of decedent. Plaintiff seeks relief solely on the basis of the alleged oral contract, asserted in Count II of the petition, as amended. The trial court found in favor of the plaintiff and entered decree accordingly. The administratrix of the estate brings the case here on appeal.

A number of questions have been argued by the parties to this appeal. It is only necessary to discuss one of them, as it is conclusive of the appeal. We are of the opinion that the trial court erred in its decree, because the alleged oral contract is not supported by legal and sufficient consideration, and, therefore, could not be the basis for a decree such as entered herein.

In the case of State Savings Bank v. Osborn, 188 Iowa 168, 172, 175 N. W. 964, 966, this court states:

"The general principle of the law of contracts, that, to be valid and legally enforceable, as between the parties thereto, an agreement or undertaking of any kind must be supported by a consideration, is too elementary to call for citation of authorities."

Under the record herein, there is a total absence of any evidence of a legal consideration to support the alleged contract plaintiff seeks to enforce. The evidence is undisputed that plaintiff was born on December 17, 1925, and, two days later, December 19, 1925, he was named August Dwayne Lanfier. He was named August after his grandfather, the decedent herein. We have carefully read and examined the entire transcript of

the testimony which has been certified to this court. There is no evidence of any request on the part of the decedent that plaintiff be named after him until the latter part of March, 1926, over three months after plaintiff had been named. There are several witnesses who testified to conversations between plaintiff's mother and the decedent at that time, the substance of which was that, if plaintiff's mother would name plaintiff after the decedent, decedent would make a will and would thereby devise to plaintiff the real esate in question, subject to a life estate in plaintiff's parents. At the time these conversations were had, plaintiff and his parents were already in possession of the property, as tenants of the decedent. We are inclined to seriously question that the subsequent possession of the property was sufficient to avoid the effect of the statute of frauds, but it is unnecessary to decide that question.

Counsel for plaintiff assert that the contract was supported by sufficient consideration, in that the prior naming of the plaintiff for the decedent constituted a past or moral consideration, and further that the contract should be supported on the basis of love and affection being good consideration. The contentions of counsel are without merit.

This court has repeatedly held that past or moral consideration is not sufficient to support an executory contract. One of the cases most cited on this proposition is that of Allen v. Bryson, 67 Iowa 591, 25 N. W. 820, 56 Am. Rep. 358. In that case, both parties were attorneys at law. The plaintiff sued to recover for professional services performed for the defendant. The defense was that the services were rendered as matters of mutual accommodation, and interchange of courtesies, without charge or expectation of payment or reward, by one as against the other. The trial court instructed the jury that, if the services were rendered without expectation of reward or intention to charge therefor, the plaintiff could not recover, *unless*, after such services were rendered and in consideration thereof, defendant agreed with or promised plaintiff to pay for the same, and that, in such case, the valuable character of the services and the moral obligation to pay for same would be sufficient consideration to support the promise and enable the plaintiff to recover. The jury returned a verdict for the plaintiff. On

appeal, the judgment was reversed, this court stating, 67 Iowa at page 596, 25 N. W. at page 822, 56 Am. Rep. 358, as follows:

"We understand this instruction to mean that where one person renders services for another gratuitously, and with no expectation of being paid therefor, a moral obligation is incurred by the latter which will support a subsequent promise to pay. In our opinion, this is not the law. If the services are gratuitous, no obligation, either moral or legal, is incurred by the recipient. No one is bound to pay for that which is a gratuity. No moral obligation is assumed by a person who receives a gift. Suppose the plaintiff had given the defendant a horse, was he morally bound to pay what the horse was reasonably worth? We think not. In such case there never was any liability to pay, and therefore a subsequent promise would be without any consideration to support it. That there are cases which hold that where a liability to pay at one time existed, which, because of the lapse of time, or for other reasons, cannot be enforced, the moral obligation is sufficient to support a subsequent promise, will be conceded.

"These cases are distinguishable, because the instructions contemplate a case where an obligation to pay never existed until the promise was made. We do not believe a case can be found where a moral obligation alone has been held to be a sufficient consideration for a subsequent promise. To our minds, however, it is difficult to find a moral obligation to pay anything, in the case contemplated in the instructions, prior to the promise. The following cases support the view above expressed: Cook v. Bradley, 7 Conn., 57 [18 Am. Dec. 79]; Williams v. Hathaway, 19 Pick. [Mass.] 387; Dawson v. Dawson, 12 Iowa 512; McCarty v. Hampton Building Assn., 61 Id. 287 [16 N. W. 114]."

It will be noted that, in the foregoing quotation, this court cites with approval the case of Dawson v. Dawson, 12 Iowa 512. In that case, the plaintiff had expended money to support his uncle, and brought suit against defendant, who was a son of the person supported, for compensation, claiming a contract for reimbursement. Defendant demurred to the petition. The demurrer was overruled. On appeal, the judgment was reversed, this court stating, 12 Iowa at page 515, as follows:

"The liability of a son in respect to the support of a parent is prospective. Therefore, an express promise to pay for past expenditures made by a third person for a parent is not binding on the child, for a moral obligation is not a sufficient consideration for the promise, when a good or valuable consideration has not once existed. See Cook v. Bradley, 7 Conn. Rep. 57 [18 Am. Dec. 79]."

The rule, announced by the two cases above quoted from, is expressly followed and applied in the cases of Tank v. Rohweder, 98 Iowa 154, 67 N. W. 106, and Meginnes v. McChesney, 179 Iowa 563, 160 N. W. 50, L. R. A. 1917E, 1060. In all of these cases, the alleged consideration is referred to as a moral consideration. However, the so-called moral consideration is based upon a prior act, so that the situation is the same as though it were referred to as a past consideration. This court expressly so recognizes in its opinion in the case of Gooch v. Gooch, 178 Iowa 902, 906, 160 N. W. 333, 334, L. R. A. 1917C, 582, wherein the court states, as follows:

"It cannot be said that the endorsement to plaintiff was upon a valuable consideration, or for value. The consideration was what has been called a past one, or a moral obligation to pay the plaintiff for services which he rendered the assignor of the note, there being no expectation on the part of either, at the time the services were made, that payment should be made therefor. Under the law, *neither* amounts to a valuable consideration. Allen v. Bryson, 67 Iowa 591."

The case of Allen v. Bryson, supra, is also cited as authority for the following statement, appearing in Elliott on Contracts, Volume I, at page 335:

"A 'past consideration' arises when some act has been done or forborne, without any promise having been given to induce such action and none is implied by law, whereby a man is benefited. A subsequent promise by the beneficiary of the act to compensate the doer thereof is null and of no binding force. This principle was early recognized. The term 'past consideration' is a misnomer. It is in fact no consideration at all."

Plaintiff relies upon the decision of this court in the case of Daily v. Minnick, 117 Iowa 563, 91 N. W. 913, 60 L. R. A.

840. In that case, the plaintiff, a minor, brought a suit to quiet title, suing by his father as next friend. The suit involved 40 acres of land owned by one John Cochrane during his lifetime. The defendants were the heirs of said decedent. The evidence showed that Cochrane orally promised that, if the plaintiff's parents would name the plaintiff after him, Cochrane, he would give the child 40 acres of land. No particular 40 acres was named, and Cochrane did not then own the land claimed by plaintiff. The evidence showed that, pursuant to the oral promise of Cochrane, plaintiff was named John Cochrane Daily. Thereafter, Cochrane purchased the 40 acres involved, taking title in his own name, but recognized the tract, by acts and declarations, as the tract to be given to the plaintiff, and afterwards placed the plaintiff and his parents in possession of said property, but neglected to convey it to the plaintiff during his lifetime or devise it to plaintiff by his will. The trial court quieted title to the property in the plaintiff. On appeal, the decree was affirmed. In its opinion, this court recognized that the naming of the child, *after* the oral promise to convey the land, constituted legal consideration, but that the contract was unenforceable when first made because no specific tract was agreed upon. In holding that the contract was made enforceable by the subsequent acts of the parties, this court states, 117 Iowa at page 570, 91 N. W. at page 916, 60 L. R. A. 840, as follows:

"When it is conceded that the contract between plaintiff's father and Cochrane is supported by a sufficient consideration, whether past or present, it follows that Cochrane has received that consideration, and the agreement, by the express language of the statute, is enforceable. The consideration has been paid. But it is said that the consideration had no reference to this particular tract of land, because Cochrane did not own it when he made the promise. We have seen that whatever of ambiguity or uncertainty there may have been in the contract when first made was rectified by the parties, who thereafter fixed and identified the tract intended to be conveyed. That this was more than two years after the child was named is unimportant, for, under our own cases, uncertainty in the original contract may be cured at any time before attempt is made to enforce it. See

cases heretofore cited, and particularly Collins v. Vanever [1 Iowa 573]."

Plaintiff relies upon the above language as a declaration by this court that past consideration will support a contract. While the language used might indicate a basis for contentions of counsel, we are convinced that such contentions are without merit. The contract, as originally made, was supported by legal and sufficient consideration. The weakness of the original contract arose, not because of lack of consideration, but because of the indefiniteness of its terms. All that this court held was that the contract might be rendered certain and enforceable, so that the original defect was cured, before attempt was made to enforce it. The situation was entirely different than that presented by the record herein. To sustain the contentions of counsel herein would require us to overrule the cases heretofore cited, which were correctly decided, and whose authority, as binding precedents, should not be jeopardized or disturbed.

The contentions of counsel to the effect that love and affection constitute sufficient consideration to support the contract here asserted are likewise without merit. No such consideration is expressed in the contract, and we seriously doubt that the record supports any claim that such might have been consideration for the alleged contract. However, in any event, the proposition of law contended for by counsel has no support in the decisions of this court or in the courts generally.

Counsel rely upon a statement appearing in the opinion in Gooch v. Gooch, supra, immediately following the language above quoted from said opinion, to wit:

"But the consideration was a good one, because based upon love and affection which the father, the endorser, had for his grandson, the endorsee, and the assignment was good, and vested the title to the note in the assignee. This would be true even if the transaction amounted to a gift."

Counsel also rely upon a similar statement, appearing in the case of Reeves v. Howard, 118 Iowa 121, 129, 91 N. W. 896, 898:

"It is true that they constitute a gift, but there is no word or fact in evidence to show that the conveyances were condi-

tional. The title passed at once. That a man may lawfully convey his lands as a gift or as a token of love and affection, and that such grantee holds by as perfect title as the grantor could convey, none will deny.''

It will be noted that the situation in each case involved a transaction that was entirely completed and was valid and binding, *as a gift*, without any consideration whatever being necessary to support it. The consideration of love and affection is not referred to as a legal or sufficient consideration to support a contract, but merely as a good consideration. Courts generally have adopted such language, but that does not support the contentions which counsel now make. This is clearly demonstrated by the statement of the general rule, appearing in 12 American Jurisprudence, 569, 570, to wit:

''Although love and affection is a 'good' consideration, it is not a sufficient consideration for a promise. Promises or contracts made on the basis of mere love and affection, unsupported by a pecuniary or material benefit, create at most bare moral obligations, and a breach thereof presents no cause for redress by the courts.''

The argument of counsel indicates that they have confused the term ''motive'' with the term ''consideration''. In Elliott on Contracts, Volume I, pages 333, 334, it is stated:

''The 'motive' for entering into a contract and the 'consideration' of the contract are not the same. * * * There is a motive for every promise given; therefore, if 'motive' and 'consideration' were synonymous, every promise, not vitiated by fraud or duress, would be enforceable at law but, as every one well knows, such is not the case.''

By reason of the foregoing, it is necessary for us to hold that the decree appealed from herein is erroneous. Such decree is now reversed and the cause remanded with instructions to dismiss the suit.—Reversed.

OLIVER, C. J., and RICHARDS, BLISS, SAGER, HALE, HAMILTON, and STIGER, JJ., concur.