WILLARD E. DULLARD, trustee of estate of Charles Ludwig Schafer, bankrupt, appellant, v. LOUIS HENRY SCHAFER et al., appellees.

No. 49863.

(Reported in 100 N.W.2d 422)

JANUARY 12, 1960.

Gilmore, Dull & Keith, of Ottumwa, for appellant.

Bailey C. Webber and A. Hollis Horrabin, both of Ottumwa, for appellees.

LARSON, C. J.—In contemplation of a second marriage, Lew H. Schafer entered into a written prenuptial contract with Clara C. Carter on the 28th day of December, 1944. The contract was unusual in that Lew's son, Charles Ludwig Schafer, was made a party thereto and signed the agreement. It is this third-party phase of the instrument with which we are concerned in this suit by the trustee in bankruptcy as he attempts to recover assets in the father's estate which the trustee alleged were disclosed, confirmed and established by that instrument. The trial court held, in denying plaintiff's prayer for relief, that plaintiff

had failed to establish any present or enforceable interest of Charles in Lew's property immediately before signing the agreement, and that the alleged contract as it related to Lew and Charles was without adequate consideration and did not confer any right or interest on Charles other than the right of inheritance which he already had under the law. We think the trial court was right.

■ The basic issue is whether the bankrupt had such an interest in the property sought to be recovered, at the time of the bankruptcy or within six months thereafter, that it would pass to the trustee in bankruptcy for the benefit of his creditors. The Bankruptcy Act of 1938, as amended, particularly Title 11, chapter 7, section 110(a) of the United States Code, of which the trial court took notice, provides that the trustee in bankruptcy is vested by operation of law with the title of the bankrupt, as of the date of the filing of the petition in bankruptcy, to all of the property of the bankrupt, except exempt property. It is, of course, the substantive law of the state that determines what is or is not a present interest subject to being transferred or used to satisfy creditors. Erie R. Co. v. Tompkins, 304 U. S. 64, 58 S. Ct. 817, 82 L. Ed. 1188, 114 A. L. R. 1487.

Apparently the usual antenuptial agreement between Lew and Clara was originally contemplated, but the coming event evidently disturbed Charles, Lew's only son, to the extent that he desired some assurance in his own right that his father would not later convey to Clara or others property which Charles thought ought to descend to the heirs of his father alone. As a result, the scrivener attempted to draft an instrument which, at least on its face, recited a consideration for Lew's promise to leave all the property then by him possessed to Charles and his heirs, to execute such a will, and not to change either without the "written sworn consent" of Charles. This instrument as drafted provided:

"It is further understood and agreed by the parties hereto that *on the death* of the said Lew H. Schafer, *all of his equity* of which he may die seized in and to the Schafer Ice and Cold Storage Company, Incorporated, including stocks, bonds, moneys, credits, securities, and any and all other interests, of whatever kind or character, he may possess in said Company, *shall go*

to his said son, Charles Ludwig Schafer, absolutely and without any limitations, in the event he survives the said Lew H. Schafer, but if he be not then living the same *shall go* to the child or children of said Charles Ludwig Schafer then living. * * *

"It is further understood and agreed by the parties hereto that on the death of the said Lew H. Schafer, his said son, Charles Ludwig Schafer, *if* he survives him, *shall have* all of the following *described real estate now owned, possessed and controlled* by the said Lew H. Schafer, to wit: * * *, but if the said Charles Ludwig Schafer be not living at the death of said Lew H. Schafer, then and in that event the *said above described real estate shall go* to the child or children of said Charles Ludwig Schafer. * * *

"The said Lew H. Schafer, by reason of all of the considerations as hereinbefore expressed, hereby, as a *part consideration* hereof, agrees that he will not hereafter change, alter or vary any of the terms hereof in any manner by conveyance of real property or any of the interests in the Schafer Ice and Cold Storage Company, Incorporated, without the written sworn consent of his son, Charles Ludwig Schafer, and this covenant is agreed to by reason of the fact that he realizes the interest now existent that his said beloved son now has in said property, as well as for other good and valuable considerations, receipt of which is hereby acknowledged." (Emphasis supplied.)

The services recited in the agreement upon which the alleged "interest now existent" arose stated:

"Whereas, Charles Ludwig Schafer is the son of Lew H. Schafer, and *has,* during his majority, *deported* himself *as a dutiful and loving son,* and *has thereby contributed* to his father's acquisition and maintenance of the property, real, personal and mixed, by the said Lew H. Schafer now possessed, the same constituting an interest therein due and owing the said Charles Ludwig Schafer, and therefore a good and valuable consideration for the signing of this instrument.

"Now, Therefore, these parties do hereby contract and agree, the consideration from each to the other existing in the specific performances, many and manifold, which *have been* performed by the said Charles Ludwig Schafer in the past, * * *." (Emphasis supplied.)

By a will executed on the same date as the contract Lew bequeathed all of his property, real, personal and mixed "to my beloved son, Charles Ludwig Schafer, should he survive me, but should I survive my said son, then and in that event it is my desire, and I so will and direct that all of the property * * * shall go * * * to his child or children then living."

Lew married Clara and she died December 23, 1954, after having willed her property to members of her family. The terms of the agreement between Lew and Clara were carried out and her estate has been administered. We are satisfied that those provisions of the fully executed agreement of December 28, 1944, as amended, do not affect one way or the other the issue here involved. Clara simply agreed that Lew's property should go to his heirs, not hers.

Other events set out in the record we may pass at the present, but on March 22, 1956, Charles Ludwig Schafer filed his voluntary petition in bankruptcy, which did not list any present interest in his father's property. He listed assets of only $50 and claims of $26,808.74. By amendment, these sums were changed to assets of $4885.88 and claims of $40,903.66. On April 10, 1956, Lew H. Schafer executed a new will and on September 19, 1956, executed a codicil thereto which left substantially all of his property in trust for the benefit of the bankrupt Charles Ludwig Schafer and his son, Louis Henry Schafer. On September 9, 1957, Lew H. Schafer died, and his will and codicil were admitted to probate over the objections of the trustee-plaintiff herein.

Most if not all of the claims in the bankruptcy grew out of the operation of a beer distributing business by the bankrupt in Ottumwa, Iowa, during the years 1953 to 1956.

Plaintiff contends, as he must, that Charles had a substantial interest in Lew's property prior to the execution of the agreement; that by the agreement Charles received the property, subject only to a life estate in Lew. He also contends that Charles could have at any time enforced his rights in and to the property held by his father, and did so on occasions; that he could have prevented his father from changing his will; that if Charles had died prior to Lew's death, his estate could have enforced these rights; that these property rights were estab-

lished and could have been reached by Charles' creditors, and that they therefore passed to the trustee in bankruptcy for the benefit of creditors on March 22, 1956. Defendants deny all these contentions or that such were the intentions of the parties, and the trial court found the recited present interest was not established and that the alleged valuable consideration disclosed was inadequate to justify a specific performance decree by a court of equity. Although there are many other well-argued propositions raised in this appeal, we are agreed that if the trial court was correct on that issue it is conclusive of plaintiff's case. Obviously, only the established interest of Charles in the property of Lew on March 22, 1956, and within six months thereafter, was available for the benefit of the bankrupt's creditors. Title 11, chapter 7, section 110, U. S. C. A.

I. As in all contracts, written and oral, we are interested in determining the intent of the parties to this agreement. Did it appear that Lew, the father, intended to presently grant to Charles his property valued at nearly $200,000, reserving only the date of delivery to the date of his death? We think not, although it must be conceded that for a valuable and adequate consideration such an agreement would be enforceable. In re Estate of Lundgren, 250 Iowa 1233, 98 N.W.2d 839.

Plaintiff relies upon the written agreement and the subsequent conduct of the parties for some twelve years thereafter for his proof of the parties' intentions. Nothing is shown as to the nature or extent of the past services. Without relating the subsequent acts or conduct in detail, we note in the record that the acts of Lew and Charles subsequent to this agreement, most of which related to real-estate transactions, were not necessarily in conflict with a desire on the part of the father to give and bequeath all of his property to the objects of his natural bounty, his son and his son's heirs, at sometime in the future. On the other hand, they did not conflict with a claim by Charles to a present interest therein, except that Charles never attempted to convey any such interest himself and failed to include as bankrupt's assets any claim of interest in his father's holdings. It is true the father included him directly or indirectly in all real-estate conveyances after the contract was signed. It was thought that, due to the agreement, there was a possible cloud

on the title to real estate held by Lew, and it seems that to avoid that cloud care was taken to have conveyances made by or through Charles. Even then, a doubt arose as to the interests of Charles' son Louis created by this agreement, and so a quieting-title action on one of the described properties was brought in the Wapello County District Court. It is interesting to note that Charles, who had taken a deed from Lew, was the plaintiff in that petition, which alleged that the contract of December 28, 1944, created no present interest in his son, Louis Henry Schafer, and that the court's decree rendered therein stated that said agreement did not create any present interest in the son, Louis Henry Schafer, the other contingent grantee named therein. This decision, defendants say, is res judicata, or at least discloses the real intention of the parties when making the December 28, 1944, agreement. Considering the entire record as to the events, past and subsequent, we are satisfied that they do not furnish clear and satisfactory proof that Lew intended a present grant by the contract of December 28, 1944, as amended.

Irrespective of the correctness of that claim, it is perhaps defendants' principal contention that the recitation of consideration in the agreement itself disclosed no valuable and adequate consideration. A valid and enforceable agreement, of course, must be supported by a good and sufficient consideration. State Savings Bank v. Osborn, 188 Iowa 168, 172, 175 N.W. 964, 966.

The trial court did not feel the interest recited was a good and sufficient consideration to bind Lew. It said: "Suppose he [Charles] had not signed the contract, and instead had sued his father in partition for his share of the property, and the only evidence he offered was identical with the language quoted above from the contract, what would he have recovered? Manifestly he would have recovered nothing." It concluded the statements were inserted merely to make a transaction look like a bargain when in fact it was not, and that they would not suffice as a consideration in the agreement. We are of the same opinion and, therefore, conclude Charles possessed no present or legally-enforceable interest in his father's property when the contract of December 28, 1944, was signed.

The question as to whether past consideration between a

father and his son alone will establish a present interest of the son in his father's property has frequently been before the courts and considered by various authorities. As bearing on this question see In re Estate of Talty, 232 Iowa 280, 5 N.W.2d 584, 144 A. L. R. 859; Allen v. Bryson, 67 Iowa 591, 25 N.W. 820, 56 Am. Rep. 358; Gooch v. Gooch, 178 Iowa 902, 160 N.W. 333, L. R. A. 1917C 582; Kregel v. Fredelake, 184 Iowa 1318, 169 N.W. 642; 12 Am. Jur., Contracts, section 110, page 603; 58 Am. Jur., Work and Labor, sections 11, 12; 17 A. L. R. 1359, 1366, 1371, 1372; 79 A. L. R. 1354; Doctrine of Consideration in Iowa Revisited—The Bargain Element, by Hudson, Drake Law Review, Volume 5, No. 2, page 67.

II. It is well settled that a court of equity will not decree the specific execution of a contract unless it is fair and the consideration is adequate. Relief is subject to the sound discretion of the court, guided by the general principles of equity. Baker v. Fowler, 215 Iowa 1157, 1159, 247 N.W. 676, and citations; 49 Am. Jur., Specific Performance, sections 8, 9; 81 C. J. S., Specific Performance, section 9; In re Estate of Johnson, 233 Iowa 782, 788, 10 N.W.2d 664, 148 A. L. R. 748, and authorities cited; Lanfier v. Lanfier, 227 Iowa 258, 261, 288 N.W. 104, 105, and citations; McDaniels v. Whitney, 38 Iowa 60; Allen v. Bryson, supra, 67 Iowa 591, 25 N.W. 820, 56 Am. Rep. 358; Harper v. Sexton, 22 Iowa 442, 445, 446. There must be at least an honest and legally recognizable consideration.

The authorities across the land are not in agreement as to what is adequate consideration in contracts of this nature. Some jurisdictions require less than others. See notes at 17 A. L. R. 1359, 1366; 169 A. L. R. 9, 57.

In the Restatement of the Law of Contracts, Consideration, section 75, under Comments (a) and (b), it is stated: "No duty is generally imposed on one who makes an informal promise unless the promise is supported by sufficient consideration. * * * (b) A statement that a consideration has been bargained for does not conclusively prove the fact. Recital of a payment not in fact made, but stated to have been made as consideration, the statement being inserted merely to make a transaction look like a bargain when in fact it was not, does not suffice. * * * The

existence or nonexistence of a bargain where something has been parted with by the promisee or received by the promisor depends upon the manifested intention of the parties."

A recitation of past services, especially those where there is nothing to show that payment therefor was contemplated by the parties when rendered, are by one line of authorities, including Iowa, declared insufficient to support a subsequent executory promise. Some, on the other hand, hold that a moral obligation arises from a material benefit conferred upon a promisor by past service and that this furnishes an adequate consideration for the subsequent executory promise. It may be said generally that we favor the rule that unless it is made to satisfactorily appear that the services rendered were not intended originally to be gratuitous, no obligation arose, even though some benefit had been derived by the promisor and detriment suffered by promisee. It is quite clear in this jurisdiction equity will not enforce a contract of the sort before us unless it appears fair and reasonable. In re Estate of Johnson, supra, 233 Iowa 782, 10 N.W.2d 664, 148 A. L. R. 748.

In Allen v. Bryson, supra, 67 Iowa 591, 25 N.W. 820, 56 Am. Rep. 358, we held past services would not support an executory promise, especially where the services were originally intended to be gratuitous. To the same effect, see Gooch v. Gooch, supra. When not so intended, see Kregel v. Fredelake, supra.

In the recent case of In re Estate of Johnson, supra, we gave consideration to the contract feature of a joint and mutual will. We said there on page 788 of 233 Iowa: "A court of equity will not decree the specific execution of a contract unless it is fair and the consideration is adequate. McDaniels v. Whitney, 38 Iowa 60; Harper v. Sexton, 22 Iowa 442, 445, 446. There must be at least an honest consideration. When the inequality of consideration is so great as to shock the conscience of the court and indicate an overreaching, specific performance will be denied. Dunlop v. Wever, 209 Iowa 590, 228 N.W. 562."

There is nothing in this record to show that the deportment of Charles as "a dutiful and loving son", thereby contributing to his father's acquisition and maintenance of the property, was not gratuitous or that payment originally had been intended for that undesignated service. Perhaps sons should be paid for

not causing parents expense and sorrow by good deportment, and perhaps such payments are contemplated in some families, but we have thus far refused to recognize them as creating upon parents a moral obligation which may be considered an adequate consideration for such an executory promise. Gooch v. Gooch, supra.

Ordinarily there is a presumption that services of a general and unspecified nature rendered between members of a family, such as father and son, are gratuitous. Lanfier v. Lanfier, supra, 227 Iowa 258, 288 N.W. 104, and citations. In that case we held a past or moral obligation was not sufficient to support an executory contract. We determined therein that love and affection and a promise to name a grandson after a grandfather, when the grandson had already been so named, were not sufficient considerations to obtain relief in equity. Also see In re Estate of Talty, supra, 232 Iowa 280, 5 N.W.2d 584, 144 A. L. R. 859; E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co., 8 Cir., 64 F.2d 224, 89 A. L. R. 238; Corbin on Contracts (1950), sections 145, 146; Williston on Contracts, Rev. Ed. 1936, section 104.

Without a satisfactory showing by plaintiff as to past services, nature and extent, such a presumption is not overcome, especially when the amounts involved, as here, are so great as to make plaintiff's claim appear unreasonable and unjust. Under such circumstances we are most reluctant to grant a prayer for specific performance.

There further appears in the agreement no new or present promise by Charles to do anything for his father, or even to continue to be a dutiful son, which could be accepted as a proper or adequate consideration for Lew's promises in the contract not to change the disposition of his property by will or conveyance. Except, then, on some estoppel basis, which we also fail to find herein, there was no legal bar to stop Lew from changing his will subsequent to his son's petition for bankruptcy. In re Estate of Johnson, supra, 233 Iowa 782, 10 N.W.2d 664, 148 A. L. R. 748, and citations.

Sections 537.2 and 537.3, Code, 1958, of course, have no application where the consideration is set forth in the written instrument. Lane v. Richards, 119 Iowa 24, 91 N.W. 786. We

said there on page 27 of 119 Iowa: "The statute was not intended to and does not furnish the consideration for contracts, and, in our judgment, it was only intended to import a consideration when the parties had failed to express it themselves * * *." Clearly they have done so here and we can look no further for the consideration between Charles and Lew.

III. Although it makes little difference in view of our conclusions above, we agree with plaintiff that the instrument involved was not a will and could not be challenged successfully by defendants because it was not properly attested. We understand plaintiff did not contend it was a will, but placed his reliance upon the proposition that the instrument was more in the nature of a conveyance by which an estate or present interest was granted although possession and enjoyment were postponed until Lew died. In re Estate of Lundgren, supra, 250 Iowa 1233, 98 N.W.2d 839.

IV. We come now to the question of equitable estoppel raised by appellants. Considerable testimony on this issue appears in the record, but we are of the opinion that no creditor actually gave Charles credit in reliance upon a present or established interest in the father's property. It is true Charles did show the written agreement to the representatives of the beer company when he asked further credit in May or June 1953, but Lew himself was never consulted by those creditors. On the other hand, it is quite clear, even after seeing the agreement, the creditors considered Charles' interest in his father's property only prospective. Neither the Heileman Brewing Company nor the Union Bank and Trust Company authorities, principal creditors involved, harbored any illusions as to Charles' present rights in Lew's property. The bank officer, who did not see the agreement, said, "our confidence in the fact that he would eventually inherit his father's property was the main reason for our extending credit." The brewery official reported "Chuck" did not have too much money, but that "when Chuck's father passes on he *will fall heir* to at least $200,000 * * *." (Emphasis supplied.) On the other hand, the record discloses the beer company did take a mortgage on real property owned by Charles as security for their extension of credit in May or June 1953.

Of course the question here is not which party will suffer

the greater detriment, but whether the innocent party relies to his disadvantage upon a promise intended or reasonably calculated to induce action by him. Miller v. Lawlor, 245 Iowa 1144, 66 N.W.2d 267, 48 A. L. R.2d 1058, and citations. It is sufficient to say that under this record we are satisfied that the promise not to revoke the will or alter the terms of the agreement without the "written sworn consent" of Charles, did not appear to, nor was it reasonably expected to, enable the son to obtain any credit or extension of credit.

V. We also concur with the trial court's decision that if the written sworn consent of Charles to a change in the will was required, that was a right which Charles could have and which he did waive when he did not object to Lew's execution of a new will April 10, 1956, leaving his property in trust for the benefit of Charles and his son, Louis. This act took place seventeen or eighteen months prior to Lew's death, and the trial court rightfully felt this continued silence gave rise to the presumption that Charles had waived his right to object to the change. Clearly, Charles did not consider the father's act a violation of the written agreement, nor against his inheritable interest as promised or intended by his father. We think it did not violate the real intention of the parties.

VI. Only one more matter needs comment in this opinion. It has been held on various occasions that even a valid contract to make a will creates no present interest in the devisee which would pass to a trustee under the Bankruptcy Act. In re Lage, N. D. Iowa, 19 F.2d 153. The case is much like the one before us. In that case Alma Lage was adjudicated a voluntary bankrupt, and her schedules included no property. On objections to discharge, it was claimed that she was the owner of a vested interest in 80 acres of land and other property based upon a joint will of her parents; that her mother, one of the parties to the will, was deceased, and her father had consented to the will, accepted benefits therefrom, and was bound not to revoke that will. Although the court found the will constituted a valid binding covenant not to revoke the joint will, it said at pages 154, 155:

"Another proposition has been settled in this state, and that is that a devisee or legatee may renounce the devise or bequest

upon the death of the testator, even though the effect of such renouncement may destroy the hopes and prospects of creditors. Schoonover v. Osborne, 193 Iowa 474, 477, 478, 187 N.W. 20, 27 A. L. R. 465, * * * a will such as the one present in the instant case is not equivalent to a present grant, which may be levied upon, and which passes the property to a trustee in bankruptcy, but is rather in the nature of a binding covenant or trust, is testamentary in its nature, and suspends the benefit until the death of the surviving testator under the joint will."

Before us we have no property right which could be exercised by Charles nor by the plaintiff-trustee in bankruptcy prior to the death of Lew. This did not happen until seventeen or more months after the petition in bankruptcy. Plaintiff's only answer to this contention was that the instrument, Exhibit D-1, was more than a contract to make a will, that it was an admission of present interest and a fixing of present rights in all of Lew's property, an issue we have fully disposed of in Division I hereof.

We are, of course, aware of the decisions in Bogenrief v. Law, 222 Iowa 1303, 271 N.W. 229, and Noonan v. State Bank of Livermore, 211 Iowa 401, 233 N.W. 487. The Bogenrief case turned upon estoppel when Law did certain things which estopped him from later renouncing the provisions of the will creating in him a life estate, and in the Noonan case we held the life estate left by will and listed as an asset in a bankruptcy proceeding was such a present contingent interest as could be transferred or used for the benefit of creditors of the bankrupt. No such life estate was established in the case before us.

Having determined the agreement did not establish or create any interest in Lew's property by the son, Charles, it must be held none of the assets now in Lew's estate could be used by Charles or attached or recovered by his creditors. Under this situation no right of inheritance passed to the trustee in bankruptcy, present or contingent.

Plaintiff's prayer for relief herein must be denied and his petition dismissed. The judgment of the trial court is, therefore, affirmed.—Affirmed.

All JUSTICES concur.