Tracy NORTH, Appellant,

v.

**MANNING TRUST & SAVINGS BANK,** Westside State Savings Bank, Kiron State Bank, James R. Lodwick, Walter H. Noack, Sears North, Lloyd Yankey and Clyde McCullough, Appellees.

No. 53505.

Supreme Court of Iowa.

July 24, 1969.

Fred Louis, Jr., and David B. Moore, Harlan, for appellant.

Wunschel & Schechtman, Carroll, for appellees.

SNELL, Justice.

By action in equity plaintiff, Tracy North, prayed that title to three farms be quieted in him against defendants (except for security interests). In substance he wanted to regain title to land he had transferred by deed. In the alternative if the relief prayed for could not be granted plaintiff sought judgment in the sum of $120,000. Plaintiff attacked three deeds executed by him, subsequent sales of the land and the disbursement of the proceeds. From adverse findings and decree plaintiff appealed.

Our review is de novo. We give weight to but are not bound by the findings of the trial court. Rule 344(f) 7, Rules of Civil Procedure.

We have reviewed the pleadings, the record, transcript, depositions, the trial court's findings and conclusions and decree. The trial court's findings and conclusions are supported by the record. We affirm.

Much of the following is from the trial court's findings.

Tracy North, age 75, has lived most of his life in Crawford County, Iowa. Allen North is his son and Leonard Baker, his stepson. Leonard Baker was not a defendant in this case, but by intervention he resisted plaintiff's claims. Just prior to the execution of the deeds involved herein Tracy North owned over 1800 acres of farm land in Crawford County, Iowa. In addition he had other substantial holdings and investments. Tracy treated Leonard Baker as one of his family and over the years Tracy, Leonard Baker, and Allen North engaged in numerous and substantial business ventures together.

The evidence indicates that these men worked together, loaned each other large sums of money and guaranteed each others obligations. On one occasion Leonard Baker loaned Tracy North some $50,000 on an open note. Another time Mr. Baker and Allen lost over $100,000 as a result of a sheep transaction in which both were involved. Leonard paid the bank $50,000 on this note by mortgaging his farm.

Walter Noack is president of the Westside State Savings Bank, Westside, Iowa, and has done business with Tracy North since 1938. He was only one of Tracy North's bankers.

James R. Lodwick is president of the Kiron State Bank located at Kiron, Iowa, and holds the same office with the Manning Trust and Savings Bank at Manning, Iowa. These latter banks have done business with Tracy, Allen and Leonard over the years.

Several years ago Allen North was operating an elevator at Westside, Iowa. He apparently incurred liability of about $90,000. Tracy North had signed as a surety on Allen's bond issued by Merchants Mutual Bonding Company of Des Moines, Iowa. The bonding company took a judgment against Tracy North in the sum of $89,547.79. In order to pay this judgment Tracy in 1967 deeded his interest in a 320 acre farm (owned by his deceased first wife) to Walter Noack. Mr. Noack was to

sell the farm and apply the proceeds. Tracy's children, except Leonard, and their spouses, also conveyed their interests in the land. Prior to September 10, 1967 Leonard Baker and his wife had not conveyed their interest. Mr. Noack made sale of the farm to people by the name of Collison for $80,000. Title problems were encountered because the estate of the deceased first wife had not been probated. Walter Noack employed attorney Allan Nash of Denison to clear the title. Title to the Collison farm was finally cleared and the sale of the farm was completed during the early part of November 1967. There was not enough money to pay the judgment in full so Mr. Noack financed the balance himself and took an assignment of the judgment from the bonding company. On September 10, 1967 there was a balance due Noack of about $14,000.

On September 10, 1967 Tracy North was indebted to the Manning Trust and Savings Bank and the Kiron State Bank in sums in excess of $46,000. These loans were secured by liens on livestock.

On September 10, 1967 Leonard Baker was obligated to the Manning Trust and Savings Bank on a security note in the sum of $5,275. He was also indebted to the Kiron State Bank in the sum of $58,615.21 which represented the balance due on the unsecured sheep note which he owed together with Allen North. In addition he owed about $6,950 to the Westside State Savings Bank on a secured note.

On September 10, 1967 Allen North owed the banks about $25,000 on secured notes.

During the first part of September 1967 the bankers determined that Allen North, Tracy North and possibly Leonard Baker were engaged in a check floating or check kiting scheme. As one of the bankers testified, "We had a beautiful kite going or large kite going, kiting of checks." The exact amount of money involved was not known, but the bankers were alarmed. Because of this a meeting was arranged for Sunday morning September 10, 1967 at the office of attorney Allan Nash in Denison, Iowa. Present at this meeting were Walter Noack, James Lodwick, Allan Nash, Tracy and Allen North, Leonard Baker and several other banks officials. The check float scheme was discussed, also the bonding company judgment now assigned to Noack, the Baker sheep note, the other unsecured indebtedness owed by Tracy, Allen North and Leonard Baker. The meeting commenced about 9:30 a. m. and ended about 3:00 p. m. There was evidence that plaintiff first volunteered to deed three farms and suggested possible buyers. Pursuant to the discussion a written instrument in words and figures as follows was prepared and executed:

### "AGREEMENT

"IT IS AGREED between the Manning Trust & Savings Bank of Manning, Iowa, Westside State Savings Bank of Westside, Iowa, and the Kiron State Bank of Kiron, Iowa, Tracy North of Vail, Iowa, Allen North of Vail, Iowa, and Leonard Baker of Vail, Iowa, as follows:

"WHEREAS, certain obligations which at the present time cannot be definitely determined, are outstanding from the undersigned Tracy North, Allen North and Leonard Baker to the Manning Trust & Savings Bank, Westside State Savings Bank and Kiron State Bank, and

"WHEREAS, Tracy North of Vail, Iowa, desires to secure this indebtedness, in part, by a transfer of assets presently owned by the said Tracy North,

"IT IS AGREED BETWEEN THE PARTIES HERETO AS FOLLOWS:

"1.

"That Tracy North is to transfer by warranty deed three (3) farms located in Crawford County, Iowa, and generally designated as the Dow City Farm, the Duffy Farm and the Mason Farm, said deeds having been executed and delivered as of the date of this agreement.

"2.

"The parties hereto agree that said transfer shall be made to Walter H. Noack, and that the parties hereto do by this agreement appoint the said Walter H. Noack to act as agent for all of the parties hereto, and to accept said titles in his individual name.

"3.

"That the said Walter H. Noack is hereby specifically authorized to sell said farms, and to deliver the proceeds therefrom to the banks heretofore mentioned, to apply on present indebtedness of the said parties, Tracy North, Allen North and Leonard Baker, and to pay expenses incurred in connection with this agreement.

"4.

"The parties hereto understand and agree that the present indebtedness of the parties cannot at the time this is written be fully determined, but that the indebtedness hereto referred to is indebtedness owing from the said Tracy North, Allen North and Leonard Baker as of the date of this agreement, including however promissory notes of Leonard Baker totalling

$30,000.00 dated September 11, 1967, and that proceeds are to be applied on said indebtedness as may be determined by the Manning Trust & Savings Bank, Westside State Savings Bank and Kiron State Bank, and it is further agreed that in the event said indebtedness is paid in full, the balance of proceeds is to be paid in full to Tracy North of Vail, Iowa.

"5.

"This agreement shall be binding upon the heirs, administrators and assigns of the parties hereto, and in the event of the death of Walter H. Noack prior to completion of this agreement, transfer agent for said properties shall be then the parties, Manning Trust & Savings Bank, Westside State Savings Bank and Kiron State Bank.

"6.

"It is understood by the parties hereto that these farms are sold subject to present outstanding leases, including leases to the Government, and that physical possession of said properties cannot be given until March 1, 1968.

"Dated this 10th day of September, 1967.

MANNING TRUST &
SAVINGS BANK
by James R. Lodwick,
President

(s)  Tracy North

WESTSIDE STATE
SAVINGS BANK
by Walter H. Noack,
President

(s)  Allen North

KIRON STATE BANK
by James R. Lodwick,
President.

(s)  Leonard Baker

"ACCEPTANCE OF AGENCY
RESPONSIBILITY

"The undersigned, Walter H. Noack, hereby accepts the above responsibility to act as agent with respect to this agreement and with respect to the transfers of title.

"Walter  H.  Noack"

The agent was duly acknowledged by all parties.

A warranty deed was prepared by Allan Nash and executed by Tracy North. The deed was taken to Tracy North's residence at Vail, Iowa, where his wife's signature was obtained and notarized. As shown the

agreement provides that Tracy would on that date (September 10, 1967) deed three farms to Walter Noack as agent and with authority for Noack to sell them. The contract provided for distribution of the proceeds.

At the close of this meeting Leonard Baker and his wife executed a deed (Leonard drove him to get his wife's signature) releasing their interest in the farm sold to the Collisons, (title problem referred to supra), and at the meeting Leonard also executed two $15,000 notes to the two banks which were holding the "kite" checks. Apparently it was necessary that the "kite" checks be taken care of immediately, and that is the reason that the two notes were executed by Leonard at this Sunday meeting. The shortage under the "check floating scheme" at that time was estimated to be about $30,000. It was later determined to be $26,700. The evidence also indicates that Baker had given some checks to help out but was not actively involved in the check floating scheme.

On October 19, 1967 the farms were sold privately at Allan Nash's office. The farms were not advertised because it was thought that the available market might be "depressed" if word leaked out concerning the troubles and activities of Allen and his father. Sale contracts were executed but need not be discussed herein.

Incident to the September 10th meeting it was admitted by plaintiff that at least twice Allan Nash told plaintiff that he should have independent counsel. There was some evidence that this admonition was given three times. Plaintiff refused to call legal counsel. He said a neighbor had advised against calling a lawyer.

There was no evidence that plaintiff was surprised at anything disclosed or discussed at the meeting. Although plaintiff later testified he understood the farms would not be sold without his consent the record discloses no evidence of any fraud, misrepresentation or concealment. There was no evidence that the deed was to be treated as a mortgage.

There was a strong family relationship and there was evidence that plaintiff said he did not want anyone to get hurt. Plaintiff was experienced in business and financial affairs. He operated on a large scale, borrowed large sums of money and knew the results of signing written obligations. He had just lost one farm because of his warehouse bond obligation. Except that he made a costly agreement there was nothing to indicate mental incapacity.

The brief and prayer of plaintiff's petition in substance is as follows: He asks that the titles to the three farms be quieted in him; that it be decreed that Noack holds title to the three farms as security for the payment of the $26,700 check float and this indebtedness only; alternatively, plaintiff in his prayer asks judgment against the defendants for $120,000 together with costs. Plaintiff also claims that his signature to the contract and deed was obtained by fraud and duress.

By previous order the issues as to the contract purchasers were separated for later hearing if such hearing was necessary.

I. The first legal issue in the case to be determined is whether the warranty deed to the three farms executed by Tracy North and his wife on September 10, 1967 was an absolute conveyance or merely given for security purposes only.

■■ It is so well settled as to need no extensive discussion that a transfer of title absolute on its face if intended as security only will be construed as a mortgage. Intent may be shown by parol. "In order that a deed be held a mortgage the evidence must be clear, satisfactory and convincing." Collins v. Isaacson, Iowa, 158 N.W.2d 14, 18, Koch v. Wasson, Iowa, 161 N.W.2d 173.

■ There is no claim that the deed to Walter H. Noack was a conveyance to him to hold for his own benefit except as he

was one of the creditors. The written agreement leading to the deed clearly refutes the claim that the deed was merely security for the payment of Tracy North's debts at some future date.

Pursuant to the agreement the deed was for the purpose of expediting the sale of the farms and the liquidation of existing debts and expenses to the extent possible. The "balance of proceeds [if any] to be paid in full to Tracy North * * *."

It should be noted that the agreement "specifically authorized" the sale by Mr. Noack.

We know of no law holding that in the absence of fraud or misrepresentation such an agreement should be construed other than according to its terms.

■ II. We quote, except for minor changes, from the trial court's conclusions:

"The plaintiff contends that a confidential relationship existed between attorney Nash, the two bankers and Tracy North at the time of the transaction and therefore the burden of proof shifted to them to show that the transaction was free from duress and fraud and that Tracy North acted with full knowledge of the facts and without any impairment of his will. * * * [Sours v. Colvin, 244 Iowa 40, 55 N.W.2d 462, Thorne v. Reiser, 245 Iowa 123, 60 N.W.2d 784].

"The court is of the opnion that even if a fidiciary relationship was established (a finding I do not make) the evidence clearly and satisfactorily discloses that Tracy North and his wife were fully advised as to the nature and purpose of the contract and deed. The testimony of attorney Nash, an attorney for many years, is particularly persuasive in establishing that no fraud or duress had been perpetrated. He met with the parties for about five hours. During the meeting * * * he took great pains to insure that Tracy understood his acts. On at least two and perhaps three occasions he advised Tracy to seek independent advice. Mr. Nash has specialized in probate and real estate law for a number of years. He is regarded as a person of impeccable integrity as well as diligent in the performance of his duties as an attorney. This court is convinced beyond a shadow of a doubt that Allan Nash carefully explained to the plaintiff the nature of the papers he had prepared at the request of the parties * * *. The check float, the bonding [company] judgment and the Baker sheep note were fully discussed. The court concludes that the evidence clearly and satisfactorily establishes that it was the uninfluenced wish and desire of the plaintiff and his wife to convey the three farms absolutely to Noack and from the proceeds therefrom to pay off the liens thereon, the expenses of the sale, including attorney fees and commissions and the balance was to be applied on the indebtedness caused by the check float; next to the bonding [company] judgment in the hands of Walter Noack, and lastly to the balance due on the Baker sheep note.

"The events that followed the September 10, 1967 meeting fully support the conclusions reached. Tracy and members of his family attended the farm sales at Nash's office in Denison, Iowa. There is testimony that attorney O'Connor was present and that he was acting either as attorney or as a friend of Tracy's and his family. Tracy bid on all three of the farms. One farm was sold to him on condition that he raise a down payment within seven days, and this Tracy was unable to do. Both Tracy and Leonard Baker testified that the farms brought a fair price.

"In November, 1967 Tracy and Leonard examined the preliminary accounting made by Noack as to the allocation of the proceeds from the earnest money payments and no objections were raised by either of them. Our court in Mohler v. Andrew, 206 Iowa 297, 300, 218 N.W. 71, said: 'Mere advice, argument, importunity, suggestion, or demand is not sufficient to constitute such duress as to vitiate an instrument duly executed by competent persons who

are fully advised regarding the transaction in which they are engaged. * * * '

"Estoppel as pleaded by the defendants is also present in the case. The law estops Tracy from complaining about the transaction (at least in the absence of fraud or duress) when he permitted the property to be sold and pass to the hands of innocent purchasers. 59 C.J.S. Mortgages—Estoppel or Waiver § 147, pages 196 and 197."

■ III. Sale of the farms was held on October 19, 1967, 29 days after the date of the agreement. Real estate agents and prospective buyers had been contacted and were present. There was testimony that many phone calls had been made. There was no secrecy and bidding was open. There was no objection as to procedure, manner, form or conduct of the sale. Plaintiff was present and participated. He bid on all three farms. He was the highest bidder on one. He was unable to make the down payment. During the bidding and while plaintiff was bidding the bids had gone to $77,000. Plaintiff's final bid was $78,000. When plaintiff was unable to make a down payment as required Mr. Noack sold the farm to the original bidder for $74,000, the amount of his original bid. He made a down payment of $25,000. This was 7 or 8 days later. There is nothing in the record to suggest that at that time the buyer was willing to pay more. Neither the record nor transcript discloses any bad faith. The transaction ended up with $3,000 less money than would have been available if plaintiff had let the next to last bid at the sale prevail. Plaintiff's overbidding when he was without funds available for a down payment caused the loss. Plaintiff may not legally complain.

IV. Appellant argues that there was error in finding that the agreement was supported by consideration.

Section 537.2, Code of 1966, provides:

"Consideration implied. All contracts in writing, signed by the party to be bound or by his authorized agent or attorney, shall import a consideration."

Section 537.3 provides:

"Failure of consideration. The want or failure, in whole or in part, of the consideration of a written contract may be shown as a defense, total or partial, except as provided in the Uniform Commercial Code, chapter 554."

■ The burden was on plaintiff to establish lack of consideration. DePenning v. Bedell, 242 Iowa 102, 106, 44 N.W.2d 385, Sisson v. Janssen, 244 Iowa 123, 130, 56 N.W.2d 30.

■ These statutes have no application where the consideration is set forth in the written instrument. Dullard v. Schafer, 251 Iowa 274, 284, 100 N.W.2d 422.

The agreement involved here made no mention of consideration.

■ The evidence does not sustain plaintiff's burden of showing lack of consideration.

There was a long record of close family and business relationships. Plaintiff, his son and stepson had on previous occasions signed substantial obligations for each other. They had helped each other without accounting as to pay. Plaintiff needed and received deeds including a deed from Baker and his wife to complete a sale and pay the bonding company judgment. They all had checks involved in the "float" or "kite."

During August 1967 plaintiff wrote checks on Westside State Savings Bank to Westside Elevator totaling over $51,000. At no time during this period did he have a bank account balance of more than $900. He knew he had insufficient funds.

In the past plaintiff had frequently written checks that overdrew his account and had made them good when called, but there was no evidence that he had previously engaged in an active check "kiting" scheme.

Plaintiff agreed, in fact he volunteered, to deed three farms to be sold as a rescue operation. If he did what he wanted to do he may not now complain about lack of consideration.

There was no misunderstanding by plaintiff as to what he had done. About a month later he made application for a farm loan on other land. He stated that he owned 1243 acres of land in Crawford County and had recently sold three farms to pay the bonding company over $110,000 on grain loss of his son.

V. Plaintiff complains about the disbursement of funds. No final accounting appears. Whether there will be an excess or insufficiency does not appear. Mr. Noack disbursed the first $40,000 received.

■ As noted in the quotation from the trial court (Division II, supra), plaintiff and Leonard Baker drove to Westside and visited Mr. Noack. Mr. Noack showed them the statement of the account and explained it to them. Neither then nor afterward for some time did plaintiff make any objections. Plaintiff now complains about the payment of real estate commissions and attorney fees. He does not question the reasonableness of the charges but says they should not be charged to him.

The charges were proper under the agreement.

Paragraph 3 of the agreement authorizes sale of the farms, delivery of the proceeds and payment of "expenses incurred in connection with this agreement."

From the $40,000 down payment Mr. Noack paid to Noack and Johnson real estate commissions in the sum of $1,130 for sale of the McCullough farm and $830 for sale of the Yankey farm. There was testimony that the payments represented the regular and going commissions in the county. Plaintiff was aware of this as he had paid them a commission on a previous sale. The payees were licensed agents and produced the buyers. The commissions were part of the expense incident to the sales.

Attorney fees in the sum of $1,000 were paid to Nash and Hall, but $567.54 of the amount paid was for services and expenses incident to the Ethel North (plaintiff's deceased first wife) estate and clearing the title to the farm sold to pay the bonding company judgment against plaintiff. Mr. Noack was billed for this account but the services were for the benefit of plaintiff. They were a part of the necessary expense incident to the satisfaction of the judgment against plaintiff. The remainder of the $1,000 was for services incident to the agreement, sale, and matters incident thereto. The charges were clearly "expenses incurred in connection with" the agreement. The charges were reasonable.

Appellant's complaint is without merit.

The right of attorneys to make charges for services that are not chargeable to plaintiff is not involved herein.

VI. The trial court concluded his careful analysis of the facts and law with these words:

"In conclusion the court would like to state that he has a certain amount of sympathy for Tracy and his other children. It is another tale of woe that we see not too infrequently. Here an elderly father has sacrificed a fortune to bail out an erring and bungling son. Tracy North must now pick up the pieces because that is what he agreed to do."

We agree.

The court adjudged and decreed as follows:

"1. The warranty deed executed by Tracy North and his wife on September 10th, 1967 to the three farms is valid and absolute.

"2. From the proceeds of the farm sales there must be paid the expenses incurred including the liens thereon, if any,

the attorney fees and real estate commission.

"3. The balance shall be applied insofar as funds permit as follows:

"a. Check float (if not already paid in full;)

"b. The judgment including accrued interest and costs due Walter Noack;

"c. The sheep note of Leonard Baker's which had a balance on September 10th, 1967, of $58,615.21 together with accrued interest;

"d. The balance, if any, to Tracy North."

The case is

Affirmed.

All Justices concur.