**HUBBARD MILLING COMPANY, Appellant,**

v.

**CITIZENS STATE BANK, Appellee.**

No. 84–1674.

Supreme Court of Iowa.

April 16, 1986.

Guy P. Booth, Cedar Rapids, for appellant.

Barry S. Mueller, Postville, and Brian L. Wirt of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McGIVERIN, CARTER and LAVORATO, JJ.

McGIVERIN, Justice.

This appeal arose out of an attempt by plaintiff Hubbard Milling Company (Hubbard) to enforce a security interest in certain livestock owned by LeRoy Odem who is not a party to this action. Hubbard's claim is based on a written subordination agreement between Hubbard and defendant Citizens State Bank (bank). Defendant bank contended the subordination agreement was unenforceable due to a failure or lack of consideration between the parties. After a non-jury trial in this law action, the district court found in favor of defendant and dismissed the case. Plaintiff appealed, and we transferred the case to the court of appeals. That court reversed the district court ruling and remanded for entry of judgment for plaintiff. We granted defendant's application for further review. We now vacate the decision of the court of appeals and affirm the judgment of the district court.

Plaintiff Hubbard is a supplier of feed and concentrates to retail dealers who sell plaintiff's products to livestock producers. The trial evidence showed that in September and October 1981, LeRoy Odem entered into a feeder-financing arrangement with Hubbard. Hubbard allowed Odem to transfer to Odem's personal account a $48,-000 open account feed bill that Postville Feed Mill owed to Hubbard. Postville was a separate business entity owned by Odem. Odem executed two personal notes totaling $48,000 in favor of Hubbard. In the process Odem was able to clear up both the $48,000 debt that Postville owed Hubbard and an account in like amount that Odem

owed to Postville. The final result of these transactions was to make Odem, not Postville, personally liable on the debts to Hubbard.

During this time Odem also was indebted to defendant Citizens State Bank. Defendant had a valid security agreement, Iowa Code sections 554.9201–.9204 (1981), effective between the bank and Odem covering all of Odem's presently owned and after-acquired livestock. The security agreement was filed with the Iowa Secretary of State on August 3, 1978, thus, creating a valid security interest in favor of defendant. Iowa Code § 554.9401(c).

■ In October 1981, plaintiff Hubbard prepared a proposed subordination agreement between it and Citizens. According to the terms of this agreement, Citizens would grant Hubbard a first security interest in Odem's feeder pigs which would have priority over defendant's security interest in the livestock to the extent of the $48,000 loan.[1] The subordination agreement provided:

### SUBORDINATION AGREEMENT

Whereas, the Citizens State Bank, Postville, Iowa, is the owner and holder of financing statements executed by Le Roy L. Odem, Postville of Allamakee County, State of Iowa (hereinafter called the "Borrower").

Now therefore, in consideration of a loan in the amount of *$48,000 or $40.00 on each feeder pig* to be made by Hubbard Milling Company (hereinafter called the "Lender") to the Borrower for the purpose of purchasing feed and concentrates to feed out feeder pigs, the Citizens State Bank does hereby give its consent to the Borrower to obtain said loan from the Lender and further agrees to and does hereby subordinate to the extent of *$48,-*

*000 or $40.00 on each feeder pig* in favor of the Lender and his successors and assigns, its lien, right, title and interest in such of the property covered by the instruments first described above which is specifically described below:

All feeder pigs, market hogs—mixed color, mixed breed now owned or hereafter acquired.

In Witness whereof, the Citizens State Bank has caused these presents to be signed on the 1st day of October, 1981.

    Citizens State Bank

    By /s/Jerald D. Solberg

    Title <u>Executive Vice President</u>

A letter by plaintiff Hubbard to defendant bank, which was introduced at trial, apparently was intended to clarify the parties' intent regarding the proposed subordination agreement. A portion of that letter provided "it is understood that your bank will subordinate your lien on hogs in the amount of $40.00 per hog in favor of Hubbard Milling Company to cover feed costs financed by Hubbard."

Prior to the time the subordination agreement was executed in October 1981, the bank was a fully secured creditor. The vice-president of the bank who signed the agreement testified the purpose of the agreement from defendant's perspective and understanding was that the bank would provide the purchase price of Odem's future-purchased feeder pigs, and that Hubbard would loan money to Odem to finance the feed for those pigs. Defendant bank was unaware of the earlier business dealings between plaintiff Hubbard, Odem and Postville and the $48,000 debt Postville owed Hubbard. The bank also was not aware the subordination agreement was a portion of Odem's agreement

---

**1.** The Uniform Commercial Code provides for the creation of subordination agreements. Iowa Code § 554.1209. In the official comment to section 1–209 of the UCC, the drafters indicate that a senior creditor may cast the subordination as an agreement to create a security interest and perfect that interest under Article 9. Absent such a clear indication to create a securi-

ty interest by a subordination agreement, and, thus, provide the holder with priority over a senior secured creditor, a subordination agreement would not create a security interest under the U.C.C. Here, such a clear indication was expressed. *See Private Subordination Agreements and the U.C.C.*, 38 Bus.Law. 557, 560 (1983).

with Hubbard to assume personally Postville's debt to Hubbard.

The record indicates that Odem did not buy any more feed from plaintiff after the execution of the subordination agreement. Thereafter, he bought all of his feed from Postville. Odem's hog operation later encountered financial difficulties and had no funds to feed the hogs. In November 1982, defendant repossessed all of Odem's remaining 472 hogs. It was necessary for the bank immediately to purchase feed for the hogs to bring them up to market weight, and they subsequently were sold for $55,941. Defendant incurred expenses of approximately $14,232 for the care and feeding of the repossessed hogs, leaving the bank with net proceeds of approximately $41,700.

Plaintiff then filed an action claiming that its security interest in the hogs had priority over defendant's interest because of the subordination agreement executed in October 1981 between the parties, and, thus, plaintiff was entitled to the proceeds of the sale of the livestock to the extent of $48,000. Defendant denied plaintiff was entitled to the money and asserted various defenses including the claim that there was a failure or lack of consideration for the subordination agreement.

After trial, the district court found as a fact that defendant received no benefit from the subordination agreement, and, thus, under Iowa Code section 537A.3, defendant had a valid defense of lack of consideration for the alleged contract. Accordingly, plaintiff's action was dismissed.

Plaintiff's appeal was transferred to the court of appeals which reversed the district court's ruling and held that plaintiff was entitled to judgment. We granted defendant's application for further review. Iowa R.App.P. 402.

The controlling issue is whether there was substantial evidence to support the district court's finding of fact that there was a lack of consideration for the subordination agreement. Iowa R.App.P. 14(f)(1). We conclude there was such substantial evidence and affirm the district court.

■ I. *Raising the defense of lack of consideration.* The written agreement at issue was signed by defendant, and a stated consideration was set forth in the writing. We ordinarily will not inquire into the adequacy of consideration. *Bell v. Cooper*, 190 Iowa 529, 534, 180 N.W. 642, 642–43 (1920). However, when the defense of lack of consideration is raised, we do ascertain whether any consideration was provided, that is, whether there was a benefit to the promisor or a detriment to the promisee. *Doggett v. Heritage Concepts, Inc.*, 298 N.W.2d 310, 311 (Iowa 1980).

We first consider Iowa Code section 537A.2 which provides:

All contracts in writing, signed by the party to be bound or by his authorized agent or attorney, shall import a consideration.

We have stated that section may not be used as a means of importing additional or different consideration into a contract where a consideration was expressly recited. *Lane v. Richards*, 119 Iowa 24, 26–27, 91 N.W. 786, 787 (1902). Because there was a consideration expressly recited in the subordination agreement, we look only at whether the consideration recited in the writing in fact existed. *Id.*

■ Also relevant to our inquiry is Iowa Code section 537A.3 which provides in part, "The want or failure, in whole or in part, of the consideration of a written contract may be shown as a defense."

It has been stated in some of our cases in dicta that Iowa Code section 537A.3 has no application where the consideration is set forth in the written agreement. *North v. Manning Trust and Savings Bank*, 169 N.W.2d 780, 786 (Iowa 1969); *Dullard v. Schafer*, 251 Iowa 274, 284, 100 N.W.2d 422, 429 (1960). These cases failed to provide any analysis as to why section 537A.3 was inapplicable under their various factual contexts. In fact, the court in *Dullard* examined the relationship between defendant and his son to determine whether there was good and valuable consideration passing between them although the agreement

at issue expressly recited the consideration. *Id.* at 280–86, 100 N.W.2d at 426–30. In *North,* there was no specific recitation of consideration in the agreement in question, and, thus, the statement regarding section 537A.3 was not relevant to the issues in the case. *North,* 169 N.W.2d at 786. We believe the statute on its face is controlling.

Thus, we will follow an approach similar to that taken by this court in the *Lane* case. There, although the agreement at issue expressly recited a consideration, the court allowed inquiry into the adequacy of the stated consideration. The court then concluded that because there was a failure of consideration, further recovery on the agreement was denied. *Lane,* 119 Iowa at 28, 91 N.W. at 787.

We conclude, therefore, that a defense of failure or lack of consideration under section 537A.3 is not precluded from being raised merely because the parties recited a consideration in their agreement, and to this extent contrary statements in *North* and *Dullard* are no longer controlling.

Therefore, defendant bank may assert the defense of failure or lack of consideration here. As defendant admits, it has the burden of proof on this issue. Iowa R.App.P. 14(f)(5); *Insurance Agents, Inc. v. Abel,* 338 N.W.2d 531, 534 (Iowa Ct.App. 1983). The district court found this burden had been met, and we agree.

II. *The evidence concerning lack of consideration.* Defendant bank did not receive any benefits as a result of the agreement. At the same time the subordination agreement was executed, the bank did not feel insecure. In fact, the bank was fully secured and its loans to Odem could have been satisfied from the collateral in October 1981. Further, Odem was already a customer at the bank, and thus, the agreement did not benefit the bank by providing it with a new customer. The language of the agreement suggests that its purpose was to allow the future purchase of feed. It states the money was for *"purchasing* feed and concentrates to feed out feeder pigs." (Emphasis added.) We would be ignoring the facts surrounding the transaction if we concluded otherwise.

The subordination agreement and surrounding circumstances as represented to the bank show the consideration intended by the parties was to be the making of a loan by Hubbard to Odem for new feed for new feeder pigs owned by Odem. The evidence shows that Hubbard did not loan any money to Odem for the future purchase of feed and that Odem bought no new feed from Hubbard after the bank signed the subordination agreement. Therefore, the consideration recited in the agreement failed or was lacking, as the district court correctly ruled.

Plaintiff makes a final claim that if this court holds the subordination agreement invalid due to lack of consideration, the common practice of allowing a farmer to purchase products from suppliers for the farmer's present crop or livestock in exchange for the supplier receiving a subordination agreement from a prior secured creditor for the extent of the value of the goods will be jeopardized. We do not agree. Such an agreement described above is for a present consideration and, thus, is valid. We conclude the subordination agreement between plaintiff and the bank was invalid because there is no present consideration. In this case we are not allowing a subordination for past debts because no such consideration was recited in the written agreement or then contemplated by the parties. *See Lane,* 119 Iowa at 26–27, 91 N.W. at 787.

We conclude that substantial evidence supports the district court's finding that defendant bank sustained its burden of proof as to failure or lack of consideration for the subordination agreement. Therefore, the court correctly dismissed plaintiff's petition.

III. *Disposition.* Accordingly, we vacate the decision of the court of appeals and affirm the district court's ruling.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF THE DISTRICT COURT AFFIRMED.