**AMANA REFRIGERATION, INC. Appellee,**

v.

**PIDGEON'S FURNITURE & APPLIANCE STORES, INC. Appellant.**

No. 88–2655.

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1989.

Decided Aug. 31, 1989.

Rehearing and Rehearing En Banc Denied Oct. 6, 1989.

Robert A. Hutchison, Des Moines, Iowa, for appellant.

James M. Peters, Cedar Rapids, Iowa, for appellee.

Before JOHN R. GIBSON and WOLLMAN, Circuit Judges, and HEANEY, Senior Circuit Judge.

WOLLMAN, Circuit Judge.

Pidgeon's Furniture & Appliance Stores, Inc. (Pidgeon's) appeals the district court's order denying its motion for enforcement of its settlement agreement with Amana Refrigeration, Inc. (Amana). We reverse and remand.

## I.

Pidgeon's is a retail seller of furniture and appliances with two stores in Iowa. Amana, a Delaware corporation, manufactures appliances in Iowa. In 1984, Amana brought suit against Pidgeon's, alleging trademark infringement and unfair competition. To avoid litigation, Pidgeon's offered to refrain from any unauthorized sale of Amana products in Iowa in return for Amana's authorization to allow Pidgeon's to sell Amana products in its Texas store, Pidgeon's Home Furnishings, Inc. Because of Amana's marketing policies and its agreement with its Texas distributor, the Stewart Company, Amana could not enter directly into a dealership agreement with Pidgeon's. Instead, it arranged for Pidgeon's to become an authorized dealer through the Stewart Company.

The settlement agreement between Amana and Pidgeon's stated in part the following:

> Amana consents to its authorized distributor in Texas, the Stewart Company, entering into an Authorized Amana Dealer Agreement with Pidgeon's Home Furnishings located at * * * Dallas, Texas.

In turn, Pidgeon's agreed not to sell Amana products in Iowa without Amana's permission.

The Stewart Company executed a dealership agreement with Pidgeon's Texas store. The parties thereafter disputed the extent of advertising permitted under the settlement agreement and therefore submitted a joint motion for enforcement of the agreement on stipulated facts, which characterized the agreement between the parties as follows:

> Defendant [Pidgeon's] [agreed] not to sell Amana products in the State of Iowa until such time as Plaintiff granted Defendant permission to do so and Defendant's related company would in turn be granted an Amana dealership for its store in Dallas, Texas.

In addition, Amana's brief in support of the motion stated that "Pidgeon's would be granted an Amana dealership for a new store location in Texas."

In late 1987 the Stewart Company went out of business. Amana continued to deal directly with Pidgeon's for several months. In June 1988 Amana informed Pidgeon's that it could no longer sell Amana products because, by the terms of the dealership agreement, Pidgeon's Texas dealership ended when the Stewart Company went out of business.

Pidgeon's filed a motion to enforce the settlement agreement, alleging that Amana had wrongfully revoked Pidgeon's Texas Amana dealership in violation of the terms of the agreement. The district court denied Pidgeon's motion. This appeal followed.

## II.

Settlement agreements are to be construed according to principles of contract law. *Wright v. Scott*, 410 N.W.2d 247, 249 (Iowa 1987). Under Iowa contract law, the intent of the parties controls the construction of the contract. *Chariton Feed and Grain, Inc. v. Harder*, 369 N.W.2d 777, 785 (Iowa 1985). The parties' intent will be determined "in conformity with a reasonable application of the circumstances under which the instrument was executed." *First Nat'l Bank in Creston v. Smith*, 331 N.W.2d 120, 122 (Iowa 1983).

We find that when all the circumstances are considered, the parties did not intend when they executed the settlement agreement to make Pidgeon's right to a Texas dealership dependant upon the Stewart Company staying in business. As Amana's distributor in Texas, it is understandable why the Stewart Company was named as the party—Amana's surrogate, as it were—through whom Pidgeon's was grant-

ed authorization to sell Amana products. Stewart Company's subsequent departure from the scene could not logically have been contemplated by the parties as an event that would terminate Pidgeon's right to continue to sell Amana's products in Texas.

Moreover, settlement agreements must be read in "light of * * * such practical construction as [the parties] themselves have placed upon it." *See Kroblin v. RDR Motels, Inc.*, 347 N.W.2d 430, 433 (Iowa 1984). *See also Village Supply Co., Inc. v. Iowa Fund, Inc.*, 312 N.W.2d 551, 555 (Iowa 1981). In both the stipulated facts and Amana's brief for the joint motion for enforcement, the settlement agreement is characterized as granting Pidgeon's an Amana dealership in Texas. If the parties had intended to make the dealership contingent upon the continued operation of the Stewart Company, they would have expressed this condition in subsequent descriptions of the agreement.

The judgment is reversed, and the case is remanded to the district court for the entry of judgment of enforcement as prayed for in Pidgeon's motion.