PMX INDUSTRIES, INC., Appellant,

v.

LEP PROFIT INTERNATIONAL, formerly known as LEP International, Inc., Appellee.

No. 93–2833.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1994.

Decided Aug. 8, 1994.

Robert G. Allbee, Des Moines, IA, argued (David H. Lubinbill, on the brief), for appellant.

Richard G. Hileman, Jr., Cedar Rapids, IA, argued (Stephen J. Holtman and Webb L. Wassmer, on the brief), for appellee.

Before McMILLIAN, Circuit Judge, OAKES *, Senior Circuit Judge, and FAGG, Circuit Judge.

McMILLIAN, Circuit Judge.

PMX Industries, Inc. (PMX), appeals from a final judgment entered in the United States District Court[1] for the Northern District of Iowa granting summary judgment in favor of LEP Profit International (LEP). *PMX Indus. Inc. v. LEP Profit Int'l.*, No. C–92–0052 (N.D.Iowa June 15, 1993). For reversal, PMX argues that the district court erred in interpreting a general release between PMX and LEP as extinguishing PMX's claims against LEP for shipping overcharges and determining that consideration supported the general release. For the reasons discussed below, we affirm the judgment of the district court.

## I.  BACKGROUND

Since 1989 PMX has been constructing a plant in Cedar Rapids, Iowa, to manufacture metal sheets. PMX purchased construction equipment and materials located in Sweden and Finland and hired LEP, an international freight and forwarder and customs broker, to facilitate transportation of the equipment and materials to Cedar Rapids. The shipments commenced in April 1990 and concluded in August 1991.

Disputes arose between PMX and LEP regarding amounts charged by LEP for its shipping services and whether LEP had overcharged PMX. PMX paid LEP for certain amounts LEP claimed were owed. LEP sought to obtain the balance, and PMX sought a refund of amounts already paid. PMX and LEP agreed to submit to binding arbitration certain disputes set forth in a document entitled "Agreement" dated December 26, 1990. In February 1991 the parties executed a document entitled "First Supplemental Agreement" wherein they agreed to submit certain additional disputes to binding arbitration. The claims submitted to arbitration totaled $518,207.32.

Subsequent to signing the two arbitration agreements, but prior to the arbitration hearing, PMX allegedly became aware of additional claims against LEP totalling $247.803.19 and sought to assert these additional claims during arbitration. LEP declined to arbitrate these additional claims (non-arbitrated claims). Thus, only the claims contained within the Agreement and First Supplemental Agreement were submitted to arbitration.

The arbitration hearing was held from September 23, 1991, to September 27, 1991. The arbitrators found in favor of PMX on a portion of its claim and ordered LEP to pay PMX $219,330.22, plus $191,741.75, an amount placed into an escrow account to be disbursed as determined by the arbitrators. The arbitrators found in favor of LEP on $118.074.79 worth of PMX's claims, sums PMX had already paid LEP but had wanted refunded.

Following entry of the arbitration award, LEP offered to pay PMX the amounts awarded upon the condition that PMX release LEP from any claims it might have against LEP. The general release and payment, in the exact amount awarded by the arbitrator, plus accrued interest, were exchanged through counsel for PMX and LEP and executed by the parties. The general

---

* The Honorable James L. Oakes, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

1. The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

release provided that PMX released LEP from:

all manner of actions, causes of action, suits, debts, dues, sums of money, ... claims and demands whatsoever, in law, in admiralty, or in equity, which it ever had, now has or which it or its successors hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of these presents.

PMX filed suit against LEP in Iowa state court seeking a refund of shipping overcharges and recovery of punitive damages related to the non-arbitrated claims under theories of fraudulent misrepresentation, negligent misrepresentation, breach of contract and negligence. LEP removed the action to federal court under diversity jurisdiction and thereafter filed a motion for summary judgment. LEP argued that the general release between the parties extinguished PMX's non-arbitrated claims. The district court granted LEP's motion for summary judgment and this appeal followed.

## II. DISCUSSION

PMX argues that the district court erred in granting LEP's motion for summary judgment because there are genuine issues of material fact which must be decided by a jury, such as whether or not the release of the non-arbitrated claims was supported by consideration and whether PMX intended to release LEP from the non-arbitrated claims. We disagree.

Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The district court's grant of summary judgment in diversity cases such as the present case is reviewed *de novo*. *Spencer v. Kroger Co.*, 941 F.2d 699, 701 (8th Cir.1991). This court must view all facts and inferences drawn therefrom in the light must favorable to the non-moving party. *Id.* Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Crain v. Board of Police*

*Comm'rs*, 920 F.2d 1402, 1405–06 (8th Cir. 1990).

PMX first argues that the district court improperly interpreted the general release as encompassing non-arbitrated claims. PMX contends that, had extrinsic evidence been admitted, such evidence would have demonstrated that PMX only intended to release LEP from the claims that were actually arbitrated. PMX argues that a jury should have been given the opportunity to weigh the extrinsic evidence which supported conflicting interpretations of the release. We disagree.

A release or settlement agreement is a contract, and is construed under the legal principles applicable to the construction and interpretation of contracts. *Amana Refrigeration v. Pidgeon's Furniture & Appliance Stores Inc.*, 883 F.2d 657, 658 (8th Cir.1989) (applying Iowa law). Where a written agreement is unambiguous, Iowa law does not allow consideration of extrinsic evidence of the parties' intentions. As provided in Iowa R.App.P. 14(f)(14), "the intent of the parties controls; and except in cases of ambiguity, this is determined by what the contract itself says." Only when a contract is ambiguous and the words cannot be interpreted on their face and be given one reasonable meaning does the court then turn to extrinsic evidence. The test for ambiguity is an objective one: whether the language is fairly susceptible to two or more different meanings. *Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 862–63 (Iowa 1991). The mere fact that the parties disagree on the meaning of a phrase does not establish ambiguity. *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104, 108 (Iowa 1981).

The district court accepted as true PMX's contention that it did not intend to release the non-arbitrated claims. However, regardless of what PMX intended in its own mind, the terms of the general release are quite broad and unambiguous. The form releases LEP from "all claims ... whatsoever from the beginning of the world to the day of the date of these presents." The language of the general release encompasses the non-arbi-

trated claims. PMX does not claim that it was unaware at the time it signed the release of the non-arbitrated claims it now pursues. Instead, PMX insists that it was aware of them but had a different intent as evinced by extrinsic evidence. The district court properly concluded that the clear and unambiguous language in the general release precluded consideration of extrinsic evidence to interpret its meaning. The language of the general release reaches all claims by PMX against LEP, including non-arbitrated claims.

PMX next argues that its alleged promise to release the non-arbitrated claims was not supported by consideration. The issue is not whether PMX received consideration specifically for the release of the non-arbitrated claims; rather, the issue is whether the release in its entirety was supported by consideration. Under Iowa law, there is no requirement that each promise in an agreement containing multiple promises be supported by separate consideration. For the general release in the present case to be supported by consideration, it is only necessary that each party to the release receive some consideration for its total undertaking, which may include a group of promises. *See Matter of Estate of Claussen,* 482 N.W.2d 381, 383 (Iowa 1992) (one consideration may support an agreement containing any number of promises).

PMX argues that no consideration was given to support the general release even if it is viewed as a total undertaking. PMX concedes that, in exchange for releasing any claims it might have against LEP, PMX received immediate payment of the sums awarded to PMX as a result of arbitration. However, PMX argues that a promise to do that which one is already legally obligated to do cannot constitute consideration. PMX contends that the only promise it ever received from LEP was the promise of payment of the arbitrator's award, which LEP was already legally obligated to pay in any event.

Iowa courts do not inquire into the adequacy of consideration. *Hubbard Milling Co. v. Citizens State Bank,* 385 N.W.2d 255, 258 (Iowa 1986) (*Hubbard Milling*); *see also*

Restatement (Second) of Contracts §§ 19 comment d, 79 comment c (1979). The relevant inquiry is whether or not *any* consideration was given. *Hubbard Milling,* 385 N.W.2d at 258. PMX received more than LEP's mere promise to pay the sums awarded in arbitration. PMX received immediate payment of those sums and the associated forbearance by LEP to contest any portion of the arbitration award on appeal or attempt to have it vacated. But for the release, LEP would have retained the right to request an order vacating the arbitration award pursuant to the United States Arbitration Act, 9 U.S.C. § 10, or an order modifying or correcting the award pursuant to 9 U.S.C. § 11. PMX's avoidance of the expense and uncertainty of a challenge to the arbitrators' award by LEP was part of PMX's consideration. The forbearance to press a claim, or a promise of such forbearance, constitutes sufficient consideration if the claimant is asserting the claim in good faith. *Dyer v. National By-Products, Inc.,* 380 N.W.2d 732, 734 (Iowa 1986). Further, despite PMX's contention, LEP was not legally obligated to pay PMX the arbitrator's award at the time it in fact paid the award. The legal effect of the arbitration award was that PMX had obtained a cause of action to enforce the award in court without having to contest the merits of the claims arbitrated. Until the award was reduced to judgment, LEP was under no legal obligation to pay it. *See* 9 U.S.C. § 9. The immediate payment of the arbitration award to PMX constituted consideration because LEP waived its right to challenge the award and require PMX to obtain confirmation of the award from a court of law.

Accordingly, we affirm the judgment of the district court.