In re the MARRIAGE OF Ramona Lynn FARR and Ronald Bruce Farr,

Upon the Petition of Ramona Lynn Farr, Appellee,

And Concerning Ronald Bruce Farr, Appellant.

No. 93–1530.

Supreme Court of Iowa.

Jan. 17, 1996.

Arthur L. Buzzell, Davenport, for appellant.

Dennis D. Jasper of Stafne, Lewis, Jasper, Alexander & Preacher, Bettendorf, for appellee.

Considered by McGIVERIN, C.J., and CARTER, NEUMAN, SNELL, and TERNUS, JJ.

McGIVERIN, Chief Justice.

The present case involves an application by petitioner Ramona Farr to reinstate the judgment against respondent Ronald Farr of a 1985 dissolution of marriage decree that provided Ramona with a property settlement and permanent alimony. The district court granted her application, but the court of appeals reversed. We agree with the district court and, thus, vacate the court of appeals decision.

I. *Background facts and proceedings.* Ronald and Ramona Farr were married in 1957. The couple had children and both parties worked regularly outside the home. In June 1984, after twenty-eight years of marriage, Ramona filed a petition for dissolution of marriage. After Ronald failed to appear in response to Ramona's petition, the court entered a decree dissolving the marriage in January 1985.

In the decree, the court ordered Ronald to pay Ramona a $13,000 property settlement as her one-half interest in the equity of their homestead property and $880 in spousal support (alimony) for five years and then $800 per month thereafter. The property settlement, which gave Ramona a judgment lien to secure it, was due either five years from the date of the decree or on the date Ramona relinquished possession of the homestead, whichever came sooner. Ramona was awarded possession of the parties' homestead for five years and Ronald was awarded title to the property. There was no provision in the decree for termination of alimony.

Thereafter, the parties have had an on again—off again relationship.

In the spring following the dissolution, the parties continued to see each other socially and discussed purchasing real estate in which they would live together. In July 1985, the parties refinanced their previous homestead at 406 South 8th street in LeClaire and Ramona received a check for $10,941.41 representing her equity in the jointly-held property.

Shortly after the refinancing, however, Ramona deposited the $10,941.41 check and other monies totaling $12,441 in a joint checking account that she continued to maintain with Ronald. Soon thereafter, Ronald used $10,-100 of the money in the joint checking account to purchase a house *in his name alone* on South Cody road in LeClaire.

After Ronald purchased the house on South Cody, Ramona moved in with him. About one year later, Ramona moved out of Ronald's house and into rental property in Davenport when she discovered Ronald had been spending the weekends living with another woman.

Around February 1987, the parties reconciled again, and Ramona moved back in with Ronald at his house on South Cody. Ronald gave Ramona a ring that both parties regarded as an engagement ring. Ramona testified Ronald asked her to remarry him and that was the reason she wore the ring. Although Ronald disputed Ramona's contentions that the parties discussed engagement, he told Ramona that he felt her filing of the petition for dissolution was a dishonest act and she would have to "erase" the dissolution decree before he would remarry her.

The parties lived together in Ronald's house on South Cody until Ramona moved out for the last time in June 1988. She has not lived in the same house as Ronald since that time.

Between February 1985 and May 1988, Ronald faithfully made the court-ordered alimony payments to Ramona. In July 1988, one month after she moved out of Ronald's house for the last time, Ramona typed and filed the following notarized statement with the clerk of district court:

> This is to certify that I, Ramona Farr, have received payments due me, cash settlement of $13,000 and $200 plus $880.00 per month to the above date and hereby waive any future payment due me from Ronald B. Farr.
>
> /s/Ramona Farr
> Ramona L. Farr

Ramona contends she filed this statement with the clerk of court upon Ronald's request. Apparently, Ronald was in the process of securing financing to buy out the private contract on his home located on South Cody road, and he did not want the dissolution decree judgments to show up as liens against his presently owned property.

After Ramona filed the release and satisfaction with the clerk of court, Ronald and Ramona again began seeing each other socially. Ronald ceased making formal alimony payments as ordered by their 1985 dissolution decree, but provided Ramona with money at her request.

In fall 1989, Ramona again parted company with Ronald when she learned he was again seeing another woman. After learning of the other woman, Ramona returned to Ronald the ring that he had given her. The parties reconciled again in January 1990 and remained together, although living apart, through 1991. Ramona did not, however, wear the engagement ring again, and Ronald did not want to discuss the possibility of reconciliation or cohabitation.

In September 1990, after returning the engagement ring to Ronald, Ramona filed an application with the district court to reinstate the property and alimony provisions of the parties' 1985 dissolution decree and requested that the court find Ronald in contempt for not meeting his obligations. Ramona ultimately dismissed the proceedings against Ronald.

In May 1992, Ramona signed a second satisfaction of judgment at Ronald's request, to remove any remaining property settlement and possible alimony liens, in order for him to be able to sell his house located on South Cody road. Ramona had the second satisfaction notarized and filed with the clerk of district court in July 1992, as she did back in July 1988 with the first satisfaction.

At the time Ramona filed the July 1992 satisfaction, the parties were communicating on friendly terms. The parties continued to see each other off and on until late 1992. In December 1992, Ramona discovered Ronald was living with another woman and refused to see him again after that date.

From June 1988 through February 1993, Ramona received nearly $14,416 in various forms of compensation from Ronald.[1] None

---

1. The $14,416 in payments from Ronald to Ramona between 1988 and 1993 included Ronald purchasing an automobile for Ramona in 1992 and paying Ramona rent earned from property at 406 South 8th street that the parties leased for approximately one year. Ronald did not believe the financial assistance he provided to Ramona

of these monies were paid to the clerk of court, *see* Iowa Code § 598.22, and were never reported as alimony for tax purposes by either party. Ramona considered the money she received from Ronald during the five year period to be a gift. The district court found Ramona was not harmed by this method of financial assistance and, in fact, received the money she needed from Ronald and had ATM access to his bank accounts.

In March 1993, Ramona filed the present application with the district court to reinstate the cash property settlement and alimony provisions of the 1985 dissolution decree that she previously stated were satisfied in July 1988 and July 1992. She contended Ronald wrongfully induced her by misrepresentation to type and file the satisfactions and releases in order for him to qualify for a loan to purchase a new house. She denied ever receiving the court-ordered $13,000 property settlement or all alimony due under the decree.

At the hearing on Ramona's application, she claimed Ronald made two general misrepresentations that persuaded her to file the releases and satisfactions: (1) Ronald promised remarriage if she negated the property settlement and alimony provisions in the 1985 dissolution decree; and (2) Ronald spoke of forming a corporation that would ensure she would receive her share of the parties' investments in homes and rental property.

In its ruling on Ramona's present application for reinstatement, the district court found Ronald caused Ramona to sign the July 1988 release and satisfaction document in order to escape the financial obligations of the decree. The court also concluded no consideration supported the purported waiver of future alimony payments and, furthermore, that the $13,000 property settlement judgment had not been satisfied. Therefore, the court ordered reinstatement of the earlier decreed property settlement and alimony obligations and ordered Ronald to pay alimo-

ny from the filing date of Ramona's March 1993 application to reinstate.

Ronald appealed. On the waiver of alimony issue, he contends the continuation of his and Ramona's relationship constituted valuable consideration to support her waiver of future alimony payments. On the satisfaction of property settlement judgment issue, he argued Ramona's receipt of a check for $10,941.41 in 1985 from the refinancing of the parties' jointly-held property satisfied the $13,000 judgment, even though Ramona deposited the check in the parties' joint checking account for Ronald's use in the purchase of real estate owned solely by Ronald.[2]

We transferred Ronald's appeal to the court of appeals. *See* Iowa Code § 602.4102(2).

The court of appeals reversed the district court's judgment and held the court erred by reinstating Ronald's previously decreed property settlement and permanent alimony obligations. That court concluded Ramona intended to satisfy the 1985 judgment and consideration supported the satisfaction and, thus, reversed the district court on all issues.

Thereafter, we granted Ramona's application for further review. *See id.* § 602.4102(4). On appeal and further review, Ramona does not challenge the district court's ruling which did not award her past alimony prior to March 12, 1993, the date she filed her most recent motion for reinstatement of judgment.

II. *Standard of review.* Our review of this equitable action is de novo. Iowa R.App.P. 4; *In re Marriage of Brown,* 487 N.W.2d 331, 332 (Iowa 1992). We are not bound by the district court's findings of fact, but we give its findings deference especially considering the credibility of witnesses. Iowa R.App.P. 14(f)(7); *Brown,* 487 N.W.2d at 332.

III. *Satisfaction and release of the permanent alimony judgment.* The first question we must answer is whether either of the releases, filed by Ramona in July 1988 and

during this five year period was made in lieu of the previously decreed alimony obligation.

2. Ronald does not contend the $14,416 in financial assistance he provided Ramona over a period of five years, between 1988 and 1993, satisfies the cash property settlement judgment.

July 1992, constituted a valid satisfaction of judgment thus releasing Ronald from future permanent alimony obligations after March 1993.[3] On further review, Ramona contends Ronald acted with deceit when he promised her remarriage if she released or waived the alimony judgment set forth in the couple's dissolution decree, and the district court was correct when it found that no consideration supported the satisfaction.

Ronald claims, on the other hand, that Ramona's satisfaction and release of the alimony provision was supported by consideration in the form of continuation or reconciliation of his and Ramona's relationship following their divorce. He asks us to uphold the court of appeals decision that reversed the district court's ruling in favor of Ramona.

Ramona admits she filed the releases that purportedly satisfied and released Ronald from his future permanent alimony obligation. Ramona claims the purported consideration, reconciliation and possible remarriage of herself and Ronald, was tainted by Ronald's true intent which was never to remarry or fully reconcile with her.

■■■ The dispute lies in whether the purported release was supported by valuable consideration as required by Iowa law. *See Broyles v. Iowa Dep't of Social Servs.*, 305 N.W.2d 718, 723 (Iowa 1981). Consideration constitutes either a benefit to the promisor or a detriment to the promisee. *Hubbard Milling Co. v. Citizens State Bank*, 385 N.W.2d 255, 258 (Iowa 1986); *Doggett v. Heritage Concepts, Inc.*, 298 N.W.2d 310, 311 (Iowa 1980); *Bankers Trust Co. v. Economy Coal Co.*, 224 Iowa 36, 42, 276 N.W. 16, 20 (1937). To constitute consideration, a performance or return promise must be bargained for. *Key Pontiac, Inc. v. Blue Grass Sav. Bank*, 265 N.W.2d 906, 909 (Iowa 1978). We have held the "payor former spouse carries the burden of proving the payee ex-spouse has received valuable consideration for a release and satisfaction of judgment." *Dwyer*

v. *Clerk of Dist. Court*, 404 N.W.2d 167, 170 (Iowa 1987).

■■■ It has long been recognized that an agreement to satisfy or discharge a judgment, entered into before it is obtained, may be binding when there is no design to defraud others and when it has no such effect. *Church v. Simpson*, 25 Iowa 408, 410 (1868); *cf. Howard v. McMillen*, 101 Iowa 453, 457–58, 70 N.W. 623, 625 (1897) (fraud and misrepresentation can be defenses to a purported settlement); *Blake v. Blake*, 7 Iowa 46, 50–51 (1858) (when inadequacy of consideration is so gross as to create a presumption of fraud, the contract formed thereon will not be enforced). We have also recognized that, in equity, a party may be denied relief based on his "inequitable, unfair, dishonest, fraudulent, or deceitful conduct." *Ellwood v. Mid States Commodities, Inc.*, 404 N.W.2d 174, 184 (Iowa 1987); *Blake*, 7 Iowa at 52 ("[A party to a dissolution] will not be deprived of her property by any gift or transfer procured by fraud, circumvention, or undue or improper influence."). Furthermore, a waiver, or a voluntary and intentional relinquishment of a known right, " 'obtained or procured by fraud or duress is, of course, ineffective.' " *Travelers Indemn. Co. v. Fields*, 317 N.W.2d 176, 186 (Iowa 1982) (quoting 92 C.J.S. *Waiver* 1054–55 (1955)). These principles are consistent with our long held view that "courts of equity will ... guard with jealous care the rights of [a party to a dissolution].…" *Blake*, 7 Iowa at 52.

Neither party contends that Ronald has "satisfied" his future alimony obligation in a monetary sense. *See* Iowa Code § 624.37. The decreed alimony obligation was $800 per month, after January 1990, and permanent in nature. Ronald contends Ramona's voluntary filing of the release with the clerk of district court was adequate to satisfy the alimony judgment.

The district court found Ronald never intended to reconcile with Ramona and, therefore, Ronald's purported intent to reconcile

3. For purposes of this analysis, we find both the July 1988 and July 1992 satisfactions were nearly identical and were filed by Ramona for the same purpose. Therefore, if we find one of the satisfactions invalid to release Ronald from the

property settlement judgment and his future permanent alimony obligations, then the other satisfaction is also invalid. The parties do not contend otherwise.

with Ramona was not valuable consideration that is needed to support the satisfaction and release. Ronald's sole intent, according to the district court, was to procure satisfactions from Ramona to release possible liens when he wished to sell his property or obtain a loan.

■ Our past decisions have made clear we can inquire into the existence of purported consideration when one party argues lack of consideration as a defense. *Hubbard Milling Co.*, 385 N.W.2d at 258. We also reiterate that we are not bound by the district court's findings of fact but we give its findings deference. Iowa R.App.P. 14(f)(7); *Brown*, 487 N.W.2d at 332.

■ On the release of alimony issue, continuation of a relationship or reconciliation is the sole form of consideration alleged by Ronald. Ramona contends valuable consideration did not exist to support the satisfaction and release. The district court found Ronald misrepresented his true intentions to Ramona and never intended to reconcile with her or continue their relationship with the intent to remarry Ramona.

We find the district court correctly inquired into the existence of the purported consideration. *See Hubbard Milling Co.*, 385 N.W.2d at 258. Due to Ronald's misrepresentations and false promises of reconciliation, we find the purported satisfaction and release filed by Ramona had no legal effect as between them, and, therefore, any purported consideration is inherently tainted.[4] Ronald's acts of deception appear to us to be even more egregious in light of the fact Ronald was undoubtedly unjustly enriched as a result of his false promises. *See Key Pontiac, Inc.*, 265 N.W.2d at 908 ("[A] person should not be allowed to profit or enrich himself inequitably at the expense of another."). In equity, our law should condemn, not reward, the type of domestic treachery in which Ronald engaged. *Cf. Ellwood*, 404 N.W.2d at 184 (cautioning that, in equity

cases, those acting with deceit and having "unclean hands" should not be rewarded).

Therefore, we conclude Ronald's acts of deception and false promises preclude any otherwise legal and binding effect the satisfaction and releases filed by Ramona may have had.

IV. *Satisfaction and release of the property settlement judgment.* The second question we must answer is whether the satisfactions filed by Ramona concerning the $13,000 property settlement judgment released Ronald from any further obligation under the relevant provision of the 1985 decree. On further review, Ramona contends she never realized the benefit of the property settlement provision because Ronald never paid her $13,000 following her relinquishment of the homestead in December 1985, and, furthermore, the releases she filed were not supported by valuable consideration.

Ronald claims the $10,941.41 check Ramona received, as proceeds from the parties' refinancing of their homestead in July 1985, satisfied the judgment, and, in any event, the two satisfactions she filed legally released him from any further obligation under the relevant provision of the 1985 decree. If Ronald had actually paid Ramona the $13,000 cash property settlement, then the satisfactions filed by Ramona would have released Ronald from any further obligation under the property settlement provision of the decree. *See* Iowa Code § 624.37.

■ We find, however, that (1) Ronald never actually paid Ramona the $13,000, as required for satisfaction of judgments under Iowa Code section 624.37, and (2) her release of the judgment had no binding effect due to Ronald's misrepresentations.

■ The payment of the amount of a judgment by the judgment debtor and filing of a satisfaction by the judgment creditor will release the debtor from liability upon the judgment. *See* Iowa Code § 624.37; *see also*

4. Because we find it was Ronald's intent to defraud Ramona out of her property interests, and not the inadequacy of the consideration, that invalidates as between them the purported satisfaction and releases filed by Ramona, *see Blake*, 7 Iowa at 51, we need not decide whether a genuine promise of reconciliation constitutes valuable consideration under Iowa law. At least one commentator has, however, indicated love and affection, standing alone, are insufficient to constitute consideration. *See* Arthur L. Corbin, *Corbin on Contracts* § 131 (one vol. ed., 1952).

*Matter v. Phillips,* 52 Iowa 232, 233–34, 3 N.W. 49, 50 (1879). Regardless of who files the satisfaction of judgment, it is the judgment debtor's burden to prove satisfaction, if challenged. *See Broyles,* 305 N.W.2d at 723.

After considering the applicable law with respect to satisfaction of judgments, we first find Ronald failed to prove that he satisfied the $13,000 judgment as he admittedly never paid Ramona the full amount of the judgment, and any money she did receive back in 1985, after the parties refinanced their homestead, was ultimately used by Ronald to purchase a house in his name alone. Ramona never realized the monetary benefit intended from the property settlement provision of the decree. We note Ronald does not contend the financial assistance he provided Ramona between 1988 and 1993 satisfies the cash property settlement judgment and, furthermore, Ramona has filed no satisfaction to that effect.

Second, we find Ronald failed to prove that Ramona received valuable consideration, due to his misrepresentations, in exchange for her filing the release of the property settlement judgment. *See Broyles,* 305 N.W.2d at 720, 723 (rejecting payor ex-spouse's argument that valuable consideration supported payee ex-spouse's purported waiver or release of future child support payments). We reach this conclusion for the same reasons we found Ramona's purported satisfaction of the permanent alimony judgment was an invalid release as between her and Ronald of that judgment.

Therefore, we conclude Ronald never satisfied the $13,000 property settlement judgment, and the satisfaction and release filed by Ramona was not valid, and Ronald continues to be bound by the 1985 judgment on that issue.

V. *Disposition.* We vacate the court of appeals decision on all issues. We affirm the district court's ruling reinstating Ronald's permanent alimony obligation, beginning March 12, 1993 at the rate of $800 per month, and affirm the district court's ruling reinstating the $13,000 property settlement judgment with statutory interest against Ronald from the date the original dissolution decree was filed.

Ramona's application for appellate attorney fees is denied.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.